# United States Court of Appeals for the Federal Circuit

03-1324, -1331

FUJI PHOTO FILM CO., LTD.,

Plaintiff-Cross Appellant,

v.

JAZZ PHOTO CORP.,
JAZZ PHOTO HONG KONG LTD., and JACK BENUN,

Defendants-Appellants.

Lawrence Rosenthal, Stroock & Stroock & Lavan LLP, of New York, New York, argued for plaintiff-cross appellant. With him on the brief were Matthew W. Siegal, Lisa A. Jakob, Angie M. Hankins and Kevin C. Ecker.

Donald P. Jacobs, Budd Larner, P.C., of Short Hills, New Jersey, argued for defendants-appellants.

Appealed from: United States District Court for the District of New Jersey

Judge Faith S. Hochberg

# United States Court of Appeals for the Federal Circuit

03-1324,-1331

FUJI PHOTO FILM CO., LTD.,

Plaintiff-Cross Appellant,

v.

JAZZ PHOTO CORP.,
JAZZ PHOTO HONG KONG LTD., and JACK BENUN,

Defendants-Appellants.

_____

DECIDED:  January 14, 2005
_____

Before:  CLEVENGER, RADER, and LINN, Circuit Judges.

RADER, Circuit Judge.

On March 18, 2003, the United States District Court for the District of New Jersey entered final judgment against Jazz Photo Corp., Jazz Photo Ltd., and Jack Benun, a former Jazz director and consultant, (collectively Jazz) for infringement of Fuji Photo Film Co. Ltd.'s (Fuji's) patents. Fuji Photo Film Co. v. Jazz Photo Corp., No. 99-2937 (D.N.J. Mar. 18, 2003) (Final Order).  Specifically, the district court found that Jazz's importation, sale, and use of over forty million refurbished disposable cameras directly infringed Fuji's family of U.S. patents directed to disposable cameras, also known as lens fitted film packages (LFFPs). Fuji Photo Film Co. v. Jazz Photo Corp., 249 F. Supp. 2d 434, 452 (D.N.J. 2003). Because the district court did not err in finding Jazz liable for direct and induced infringement, in awarding damages based upon the jury's reasonable royalty

rate, in refusing to enhance those damages, or in denying Fuji a permanent injunction, this court affirms.

## I.

Fuji and Jazz are no strangers to this court. Their dispute began in 1998, when Fuji commenced a proceeding before the International Trade Commission (ITC) against twenty-six respondents, including Jazz, under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337. Through the ITC proceeding, Fuji sought to restrict the respondents' importation of refurbished LFFPs, alleging infringement of fourteen of its patents directed to LFFPs.[1] LFFPs are simple, relatively inexpensive cameras that Fuji originally intended to be disposable after a single use. See, e.g., U.S. Patent No. 4,884,087 (issued Nov. 28, 1999), col. 6, ll. 14-18 (noting that "forming an opening in the film package makes it impossible to reuse the film package. Therefore it will be impossible to refill a new film into the used film package in order to reclaim a film package for reuse."). In response to public protest of the camera shell disposals, Fuji began a recycling program in 1991. Fuji subsequently learned that several companies, including Jazz, purchased used LFFP shells from foreign factories. These companies then refurbished the LFFPs by inserting new film through multiple steps. Then they

---

[1] The asserted patents are: 1.) U.S. Patent No. 4,833,495; 2.) U.S. Patent No. 4,855,774; 3.) U.S. Patent No. 4,884,087; 4.) U.S. Patent No. 4,954,857; 5.) U.S. Patent No. 4,972,649; 6.) U.S. Patent No. 5,235,364; 7.) U.S. Patent No. 5,361,111; 8.) U.S. Patent No. 5,381,200; 9.) U.S. Patent No. 5,408,288; 10.) U.S. Patent No. 5,436,685; 11.) U.S. Patent No. Re 34,168; 12.) Design Patent No. D 345,750; 13.) Design Patent No. D 356,101; 14.) Design Patent No. D 372,722.

resold the refurbished cameras. Upon learning of these resales, Fuji instituted the ITC proceeding.

The primary issue before the ITC was whether the respondents' refurbishment of Fuji's used LFFPs constituted permissible repair or impermissible reconstruction. Although the participating respondents did not disclose their respective refurbishment acts in their entirety, each acknowledged performance of at least eight common steps when refurbishing the Fuji LFFPs.[2] The ITC administrative judge determined that those eight steps constituted impermissible reconstruction. In the Matter of Certain Lens-Fitted Film Packages, Inv. No. 337-TA-406, IRD at 86 (Int'l Trade Comm'n. Feb. 24, 1999). The ITC subsequently adopted the administrative judge's findings. In the Matter of Certain Lens-Fitted Packages, Inv. No. 337-TA-406, n.4 (Int'l Trade Comm. June 28, 1999). Accordingly, the ITC issued a general exclusion order and an order to cease and desist from further infringement of Fuji's patents. Fuji, 249 F. Supp. 2d at 440.

Before the ITC issued its final determination, Fuji filed suit against Jazz in the United States District Court for the District of New Jersey seeking damages and injunctive relief for direct and indirect infringement of its LFFP patents. Following the ITC's final determination, however, some of the ITC respondents filed an appeal with this court. The district court stayed its proceedings pending

---

[2] The eight refurbishment steps include: 1) removing the cardboard cover; 2) cutting open the cardboard case; 3) inserting new film and a new film receiving container; 4) replacing the winding wheel; 5) replacing the flash in relevant LFFPs; 6) resetting the counter; 7) resealing the outer case; and 8) adding a new cardboard cover.

that appeal. In August 2001, this court reversed the ITC's final determination, finding instead that the eight-step refurbishment procedure constituted permissible repair. Jazz Photo Corp. v. Int'l Trade Comm'n, 264 F.3d 1094, 1110-11 (Fed. Cir. 2001). Moreover, this court held that only LFFPs first sold in the United States qualified for the repair exclusion under the exhaustion doctrine. Id. at 1105.

This court's holding in Jazz, however, was not entirely dispositive of the repair/reconstruction issue before the district court. In particular, Jazz acknowledged that its specific refurbishment procedures comprised a possible total of nineteen refurbishment steps, including the eight previously considered in Jazz. Accordingly, the district court lifted its stay and Fuji's lawsuit proceeded.

A series of stipulations entered into by both parties significantly shape the course of this litigation. First, in order to alleviate discovery burdens, both parties stipulated to the use of the record developed before the ITC (Discovery Stipulation). Fuji, 249 F. Supp. 2d at 441. Next, both parties stipulated to a special verdict jury form that generally queried whether Jazz's supplier factories performed each of the nineteen refurbishment steps. In other words, the form did not query the jury for each of Jazz's eight supplier factories, located in China, but rather grouped the refurbishment steps generally as one inquiry. Id. The parties then stipulated that the district court would not be bound by the advisory jury determination of the number of repaired LFFPs as reflected in the district court's October 17, 2002 letter/Order to counsel, entered into the record on October 21, 2002. Finally, during trial, the parties stipulated and the district court instructed

the jury that Fuji had not sought an order in either the ITC or the district court compelling discovery in the Chinese factories.

Of relevance to this appeal, after a five week trial, the jury determined that: 1) Jazz infringed Fuji's patents by refurbishing 39,889,850 LFFPs; 2) Jazz willfully infringed by selling 1,209,760 newly-made LFFPs; and 3) Jazz owed a reasonable royalty of $0.56 per LFFP to compensate for infringement. Fuji, 249 F. Supp. 2d at 441. After the jury reached its verdict, the district court evaluated the repair/reconstruction issue as well as the underlying exhaustion issue.

In its analysis, the district court first determined that the nineteen steps were effectively sub-steps of the eight steps that this court previously deemed permissible repair. Id. at 447 ("[T]he procedures found by the jury to have been performed in this case all devolve into opening the cameras, replacing the film and battery, and closing the cameras.") As such, the district court then evaluated which of the eight Jazz Chinese factories performed these nineteen steps. Although Jazz had presented testimony regarding three Chinese factories, the district court rejected Jazz's proposed inference that its evidence represented the refurbishment activities at the remaining five Chinese factories. Id. at 448. Upon reviewing the record to adduce the number of refurbished LFFPs attributable to the three Chinese factories, the district court determined that the only evidence of record reflected 10%, or 4,009,937, of the LFFPs were permissibly repaired.

Recognizing that the repair affirmative defense is based upon the exhaustion doctrine, the district court next turned its analysis to the issue of foreign LFFP sales. Id. at 448-49 (the "finding of repair with respect to

approximately 4 million cameras does not end the inquiry, because a refurbished disposable camera infringes unless it was permissibly repaired from an empty camera shell first sold in the United States"). The district court interpreted this court's Jazz exhaustion precedent in holding that only first sales in the United States would serve as the appropriate basis for the repair affirmative defense. Id. at 449. Based on evidence presented by both parties, the jury determined that roughly 9.5%, or 3,809,442, of Jazz's refurbished LFFPs derived from United States first sales. Id. at 451. The district court then evaluated the nexus of refurbished LFFPs (1) that were first sold in the United States, and (2) which Jazz permissibly repaired. Recognizing the difficulty in requiring direct proof of the number of LFFPs fitting this description, the district court reasoned that it would be appropriate to infer that 9.5% of the 4,009,937 total potentially permissibly repaired cameras were attributable to United States first sales. Accordingly, the district court determined that Jazz's evidence supported a finding that 380,944 LFFPs fit these criteria. Id. at 452.

After the trial, Jazz filed a JMOL motion challenging the jury's findings of willfulness, inducement, and the reasonable royalty rate. Id. at 452-59. The district court denied Jazz's JMOL motion, finding that substantial evidence supported the jury verdict, but declined to enhance damages for the willful infringement of the newly-made LFFPs. The district court further held Mr. Benun liable for inducing Jazz's infringement of Fuji's disposable camera patents. Id. at 457-58. Accordingly, the district court awarded total damages to Fuji in the amount of $29,765,280.60, based on the jury's determination of a $0.56

reasonable royalty per camera.[3]  Final Order, slip op. at 2.  Moreover, the district court denied Fuji's request for permanent injunctive relief.  Id., slip op. at 2 n.1.

On appeal, Jazz challenges the district court's finding that it did not provide sufficient evidence that all eight of its Chinese supplier factories performed the nineteen repair steps.  Jazz also disputes the district court's application of the exhaustion doctrine as enunciated in this court's holding in Jazz.  Finally, Jazz disputes the jury's findings of Mr. Benun's liability for inducing Jazz's infringing acts, of willfulness, and of $0.56 as a reasonable royalty.  Fuji, in turn, cross appeals the district court's finding that Jazz sufficiently proved that 10% of its refurbished LFFPs fell within the repair safe harbor, as well as the district court's refusal to enhance damages and its denial of a permanent injunction.

II.

This court reviews a district court's conclusions of law without deference and its findings of fact for clear error.  Golden Blount, Inc. v. Robert H. Peterson Co., 365 F.3d 1054, 1058 (Fed. Cir. 2004).  An interpretation of the parties' pretrial stipulation, much like contract interpretation, is a legal issue that this court reviews de novo.  Kearns v. Chrysler Corp., 32 F.3d 1541, 1545 (Fed. Cir. 1994).  This court reviews a denial of JMOL without deference by reapplying the JMOL standard.  Thus, this court will affirm a denial of JMOL unless substantial

---

[3]  Of this total damage award, the district court held Mr. Benun jointly and severally liable with the Jazz entities for $28,438,361.84 because the jury found him liable for inducing infringement of 39,103,664 of the total 40,928,185 imported cameras.

evidence does not support the jury's factual findings or the verdict rests on legal errors. <u>Waner v. Ford Motor Co.</u>, 331 F.3d 851, 855 (Fed. Cir. 2003).

Willful infringement is a question of fact that this court reviews for substantial evidence. <u>Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.</u>, 246 F.3d 1336, 1346 (Fed. Cir. 2001). This court reviews the denial of enhanced damages and a permanent injunction for abuse of discretion. <u>Odetics, Inc. v. Storage Tech. Corp.</u>, 185 F.3d 1259, 1272-74 (Fed. Cir. 1999).

### III.

### A. Jazz's Burden of Persuasion

Not surprisingly, Jazz and Fuji take opposing views regarding the adequacy of Jazz's evidence concerning its repair affirmative defense. Jazz contends that its evidence is sufficient to support the inference that all, or 100%, of the LFFPs are repaired. Fuji, in its cross appeal, argues that Jazz's evidence does not support the district court's finding that 10% of the LFFPs are repaired. Aside from its contentions regarding the adequacy of the evidence, Jazz further argues that its pretrial stipulation did not give the judge the final word on its defense.

Jazz bears the burden of preponderant proof on its affirmative defense of repair. <u>Jazz</u>, 264 F.3d at 1102 ("The burden of establishing an affirmative defense is on the party raising the defense."). Moreover, Jazz's burden "includes the burden of coming forward with evidence to show that the activities performed in processing the used cameras constituted permissible repair." <u>Id.</u> In essence, the parties' dispute boils down to whether Jazz met its burden of persuasion.

At trial, Jazz relied on two sources of evidence for its affirmative defense. First, Jazz presented a videotape depicting the refurbishment in one of the eight Chinese factories. Second, Jazz relied on the testimony of its current Chairman, Mr. Lorenzini. Mr. Lorenzini generally testified that some or all of the nineteen refurbishment steps were performed at all eight factories. Mr. Lorenzini, however, had only visited three of these factories.

In support of the adequacy of its evidence, Jazz points to the testimony of Mr. Lorenzini and the questions on the special jury verdict form. Jazz stresses that the jury question was general in nature as opposed to a factory-by-factory analysis and that Mr. Lorenzini presented his testimony in accordance with that format. As such, Jazz complains that the district court clearly erred in refusing to draw the inference, based on the Lorenzini testimony, that all eight factories used the same refurbishment steps. Fuji responds that Mr. Lorenzini's testimony could not speak to the process at all eight factories because he lacked personal knowledge of the remaining five.

This court cannot find that the district court clearly erred in refusing to draw an inference about the five factories of which no Jazz representative had personal knowledge. This court recognizes that "[i]t is hornbook law that direct evidence of a fact is not necessary. 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'" Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1272 (Fed. Cir. 1986) (citing Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 330 (1960)). Nevertheless, the trial court has the responsibility to weigh the evidence and

credibility of the witnesses in deciding the inferential reach of such circumstantial evidence. State Indus., Inc. v. Mor-Flo Indus., Inc., 948 F.2d 1573, 1577 (Fed. Cir. 1991) ("The weighing of conflicting evidence is a task within the special province of the trial judge who, having heard the evidence, is in a better position than [this court] to evaluate it.").

Indeed, in the earlier Jazz opinion reversing the ITC judgment, this court emphasized the burden of proof in satisfying the affirmative defense:

> We cannot exculpate unknown processes from the charge of infringing reconstruction. Thus our reversal of the Commission's decision does not apply to LFFPs from those remanufacturing facilities for which discovery was refused or where the evidence offered was found incomplete or not credible by the ALJ.

Jazz, 264 F.3d at 1109. The trial judge took seriously this court's admonition to examine the evidence for completeness and credibility. Here, where no Jazz representative had personal knowledge of the refurbishing acts performed at five Chinese factories, this court cannot form a "definite and firm conviction that a mistake has been committed" in the district court's holding that Jazz did not meet its burden of proving the repair defense. United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

This court notes that the record shows that Mr. Lorenzini admitted that processes at the eight factories differed. For instance, Mr. Lorenzini testified that one of the three plants he visited did not remove the back covers. Moreover, Mr. Lorenzini's testimony only discussed one of the numerous types of camera shells reloaded for Jazz. Thus, as the district court found, Jazz provided only

incomplete evidence. This court detects no clear error in the district court's assessment of the insufficiency of Jazz's proof.

Jazz next contends that the district court clearly erred in failing to credit the jury's affirmative answer to special verdict question number five. In response to this question the jury found that all of the nineteen steps were known for all eight Chinese Factories. Jazz argues the district court was bound by this finding. Jazz seems to contend this means the jury found all nineteen steps were generally performed at each factory, compelling a finding that Jazz permissibly repaired each refurbished LFFP.

To the contrary, the parties' stipulation rendered the jury's determination of repaired LFFPs advisory. Thus, the district court retained the right to make its own determination. In relevant part, the district court interpreted the parties' stipulation as follows:

> All parties have agreed that, pursuant to paragraph 5 of the stipulation, the Court will first render a legal determination as to whether the refurbishment processes employed by Jazz and/or its suppliers constitute repair or reconstruction. Applying this legal analysis, the Court will then determine the factual issue of the number of cameras reconstructed (or, conversely, the number of cameras for which insufficient evidence of repair has been presented). <u>The Court understands that the parties agree that the jury will render an advisory opinion as to the number of repaired and/or reconstructed cameras, which the Court will consider, but not be bound by, in rendering its ruling on the issue</u>.

Order (October 17, 2002) (emphasis added). The district court's interpretation does not reflect the constraints that Jazz would place on the stipulation. Specifically, Jazz seeks to narrow the advisory jury ruling to question six of the special verdict form, while maintaining the answers to question five as binding.

03-1324,-1331                                      11

Had Jazz intended to place these constraints on the district court, it was obligated to clarify them upon receipt of the district court's October 17, 2002 Order setting the process for determining the number of repaired LFFPs. This court detects no error in the district court's determination to honor the parties' stipulation.

In its cross-appeal, Fuji contends that the district court clearly erred in finding that 10% of the refurbished LFFPs were permissibly repaired where Jazz's evidence was not verifiable, complete or credible.[4] Fuji primarily disputes that Jazz's evidence, namely the video and Mr. Lorenzini's testimony, are not verifiable because Fuji was not permitted discovery in the Chinese factories. Fuji, however, stipulated during trial that it did not seek to compel discovery from the eight Chinese factories. Fuji cannot now complain that Jazz's evidence is not verifiable in the absence of any effort on its own part to seek verifying discovery. Again this court finds no clear error in the district court's finding that 10% of Jazz's LFFPs were permissibly repaired.

In sum, the district court walked an evidentiary tight rope. On one side,

---

[4] Notably, Fuji does not dispute the district court's finding that the nineteen steps constitute permissible repair. Although Fuji attempts to raise a specter of this repair/reconstruction argument in a footnote in its opposition brief and more fully in its reply brief, this court will not address arguments not properly raised in an Appellee's opposition brief, which also served as an opening brief for its cross-appealed issues. Cf. Graphic Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1385 (Fed. Cir. 1998) (refusing to preserve an argument raised in a footnote, which in turn referenced the full argument in the appendix); Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 800 (Fed. Cir. 1990) (declining to "depart from the sound practice that an issue not raised by an appellant in its opening brief . . . is waived"). This court will therefore follow the strained Jazz repair/reconstruction precedent even where additional refurbishment steps were allegedly at issue in the district court proceeding.

the trial court refused to credit Jazz's evidence as representative of all eight factories. On the other, it found that evidence credible for the three factories for which Jazz presented some direct testimony. Further, the district court faced the difficulty of determining the number of LFFPs both first sold in the United States and permissibly repaired in one of the three factories. In the absence of any direct evidence on the number of United States sales, the district court permissibly used circumstantial evidence to calculate the total repaired LFFPs. Moleculon Research Corp., 793 F.2d at 1272. Upon review of the entire record, this court finds no clear error in any of the district court's findings.

## B. Exhaustion Doctrine

Jazz next argues that the district court misconstrued this court's holding regarding exhaustion in Jazz. In the alternative, even if the district court properly construed this court's exhaustion holding, Jazz contends that its effect should be purely prospective.

In Jazz, this court held that:

> To invoke the protection of the first sale doctrine, the authorized first sale must have occurred under the United States patent . . . . Our decision applies only to LFFPs for which the United States patent right has been exhausted by first sale in the United States. Imported LFFPs of solely foreign provenance are not immunized from infringement of United States patents by the nature of their refurbishment.

Id. at 1105 (citing Boesch v. Graff, 133 U.S. 697, 701-03 (1890)).

This court does not construe the "solely foreign provenance" language or the Boesch citation to dictate a narrow application of the exhaustion principle. Specifically, this court does not read Boesch or the above language to limit the

exhaustion principle to unauthorized sales. Jazz therefore does not escape application of the exhaustion principle because Fuji or its licensees authorized the international first sales of these LFFPs. The patentee's authorization of an international first sale does not affect exhaustion of that patentee's rights in the United States. Moreover, the "solely foreign provenance" language does not negate the exhaustion doctrine when either the patentee or its licensee sells the patented article abroad.

Read in full context, this court in Jazz stated that only LFFPs sold within the United States under a United States patent qualify for the repair defense under the exhaustion doctrine. Id. Moreover, Fuji's foreign sales can never occur under a United States patent because the United States patent system does not provide for extraterritorial effect. Int'l Rectifier Corp. v. Samsung Elecs. Co., 361 F.3d 1355, 1360 (Fed. Cir. 2004) ("Further, it is well known that United States patent laws 'do not, and were not intended to, operate beyond the limits of the United States,'" quoting Brown v. Duchesne, 60 U.S. 183, 195 (1856)). In Jazz, therefore, this court expressly limited first sales under the exhaustion doctrine to those occurring within the United States. Accordingly, the district court correctly applied this court's exhaustion precedent.

With respect to the exhaustion doctrine, Jazz argues that the district court's application of the exhaustion doctrine should have only prospective effect. Jazz relies on the first of three factors in Chevron Oil Co. v. Huson, 404 U.S. 97, 106 (1971), to attempt to limit the retroactive effect of this judicial decision. The first factor concerns decisions, which "establish a new principle of law, either by

overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed." <u>Chevron</u>, 404 U.S. at 106 (citations omitted). Jazz contends that this court's explanation of the application of exhaustion to foreign sales decided a matter of first impression not clearly foreshadowed.

This court need not reach the merits of this prospective effect argument because Jazz in effect waived this argument by failing to raise it in a form that requested or required a decision from the district court. Jazz contends that it preserved this issue for appeal by moving for a stay pending appeal: "It seems unlikely – and certainly unfair – that the Federal Circuit could have intended [the 'exhaustion by first sale' issue], which was not even raised by Fuji in the ITC or the Federal Circuit, to result in a holding with devastating retroactive effect." A few phrases in a stay motion, however, are not sufficient to apprise the district court that it must address another point of law. Indeed, the district court in its extensive opinion did not address the retroactive effect of the <u>Jazz</u> exhaustion doctrine. This court observes that the district court provided a well reasoned and thorough analysis on a multitude of important issues in this case. The absence of any discussion of retroactivity strongly suggests that Jazz did not bring this issue to the trial court's attention in a manner that requested or required analysis. The exhaustive historical review of the repair/reconstruction doctrine is but one example of the district court's special care to resolve issues presented by the parties. Accordingly, this court declines Jazz's invitation to consider its retroactive effect argument for the first time on appeal. <u>Singleton v. Wulff</u>, 428

U.S. 106, 121 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

## C. Inducement

On appeal, Jazz contends that substantial evidence does not support the jury's finding that Mr. Benun possessed the requisite intent to induce Jazz's infringement. Title 35 provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b) (2000). A finding of inducement requires both an underlying instance of direct infringement and a requisite showing of intent. Insituform Techs., Inc. v. Cat Contracting, Inc., 385 F.3d 1360, 1378 (Fed. Cir. 2004) (citing Water Techs. Corp. v. Calco, Ltd., 850 F.2d 660, 668 (Fed. Cir. 1988)). In this case, the inducement inquiry turns on the requisite showing of intent.

This court recently recognized a "lack of clarity" about the appropriate level of intent for inducement. Insituform, 385 F.3d at 1379. Specifically, this court has historically required either a general or a specific level of intent to induce infringement. See Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1469 (Fed. Cir. 1990) ("[P]roof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement."); see also Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 553 (Fed. Cir. 1990) ("The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements.").

A patentee may prove intent through circumstantial evidence. See Water Techs. v. Calco, Ltd., 850 F.2d 660, 668 (Fed. Cir. 1988) (noting that "circumstantial evidence may suffice" in proving intent). Although Mr. Benun took the position that he did not believe refurbishing LFFPs had any effect on Fuji's patent rights, the record shows he was aware of Fuji's infringement contentions. In fact, the record shows that Mr. Benun twice sought a license from Fuji. This court has acknowledged the relevance of that kind of evidence supporting proof of intent for inducement. See Mentor H/S, Inc. v. Med. Device Alliance, Inc., 244 F.3d 1365, 1379 (Fed. Cir. 2001). Moreover, under Mr. Benun's leadership, Jazz continued to sell refurbished LFFPs even after the ITC found infringement.

In sum, as the district court observed, Fuji provided circumstantial evidence that Mr. Benun exerted control over Jazz as both its CEO and later as its consultant. Fuji, 249 F. Supp. 2d at 458. Fuji also demonstrated that Mr. Benun's acts of selecting the foreign refurbisher supply factories and his overall acts of directing Jazz's business model caused the infringement. Id. Accordingly, substantial evidence supports the jury's finding of intent under either the Hewlett-Packard or the Manville standard of intent. Where, as here, "[i]ntent is a factual determination particularly within the province of the trier of fact," Allen Organ Co. v. Kimball Int'l, Inc., 839 F.2d 1556, 1557 (Fed. Cir. 1988), this court sees no reason to disturb the jury's finding of Benun's intent to induce infringement.

D.  Reasonable Royalty Rate

Jazz argues that the district court erred in denying its JMOL motion seeking to set aside the jury's assessed reasonable royalty of $0.56 as "grossly excessive or monstrous, clearly not supported by evidence, or based only on speculation or guesswork." Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1290 (Fed. Cir. 2002).  In particular, Jazz contends that the jury should have accorded more weight to Fuji's prior license agreements with other LFFP refurbishers.

The jury had before it a wide range of reasonable royalty rates propounded by each party's damages expert.  At the lower boundary, Jazz's expert opined that rates of $0.075 and $0.11  were appropriate for its refurbished and newly-made LFFPs, respectively.  In stark contrast, Fuji's expert estimated that in a hypothetical negotiation between the parties they would have converged on a royalty rate of $1.00.

This court has previously recognized that the jury is not bound to accept a rate proffered by one party's expert but rather may choose an intermediate royalty rate.  Unisplay, S.A. v. Am. Elec. Sign Co., Inc., 69 F.3d 512, 519 (Fed. Cir. 1995) ("[A] jury's [royalty] choice simply must be within the range encompassed by the record as a whole."); see also SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 926 F.2d 1161, 1168 (Fed. Cir. 1991) ("[T]he district court may reject the extreme figures proffered by the litigants as incredible and substitute an intermediate figure as a matter of its judgment from all of the

evidence."). In this case, the jury was within its right to reject Fuji and Jazz's extreme rates and substitute its own.

Several points in the record support the jury's royalty determination. For instance, Fuji's patented invention exhibited enormous commercial success. One expert, Mr. Carter, set Jazz's incremental profit at $1.09 and Fuji's lost profits at $2.33 per camera. Thus, the jury's royalty assessment does not show excessiveness or speculation. This court observes that a $0.56 royalty leaves a $0.53 profit margin per LFFP under the figures in the record. This court therefore affirms the jury's reasonable royalty rate.

### E. Willfulness

Jazz next argues that the district court erroneously denied its JMOL motion seeking to overrule the jury's finding that the sale of 1,209,760 newly-made LFFPs constituted willful infringement. Jazz contends that no evidence shows the requisite culpable intent. At most, Jazz explains, the evidence demonstrates negligence. Fuji counters that Jazz had knowledge of the Fuji patents as early as 1995.

The willfulness inquiry requires "consideration of the totality of the circumstances." Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir. 2004) (en banc) (citation omitted). Here, the circumstances are largely undisputed. First, Jazz had actual notice of the Fuji patents as early as 1995, giving rise to a duty of due care. Jazz also admits its aggressive policy to sell newly-made LFFPs. Mr. Benun, however, testified that he lacked any knowledge at the time of the sales that the LFFPs were newly-

made. Thus, Jazz contends that it lacked the requisite knowledge to form a willful intent to infringe.

As the district court aptly observed, the jury heard Mr. Benun's self-serving testimony and weighed its credibility. <u>Fuji</u>, 249 F. Supp. 2d at 457. Thus, the district court declined to disturb the jury's willfulness finding. <u>See</u> <u>BJ Servs. Co. v. Halliburton Energy Servs., Inc.</u>, 338 F.3d 1368, 1371 (Fed. Cir. 2003) (in reviewing whether substantial evidence supported jury finding, this court "must consider the evidence of record . . . <u>without disturbing the jury's credibility determinations</u> or substituting [this court's] resolutions of conflicting evidence for those of the jury." (emphasis added and citation omitted)); <u>Comark Comms., Inc., v. Harris Corp.</u>, 156 F.3d 1182, 1192 (Fed. Cir. 1998) ("It is not the province of an appellate court to second guess the jury's credibility determinations or to reevaluate the weight to be given the evidence."). Following the appropriate deference accorded by the district court, this court affirms the jury's willfulness finding on the newly-made LFFPs.

### F. Refusal to Enhance Damages

Fuji, in its cross appeal, asks this court to find that the district court abused its discretion in refusing to enhance damages for the <u>refurbished</u> LFFPs and accordingly seeks a remand. Fuji does not, however, appeal the district court's refusal to enhance damages for the newly-made LFFP sales that the jury found to constitute willful infringement. Jazz responds that the district court did not abuse its discretion in refusing to enhance damages for the refurbished LFFPS,

particularly where the jury found that the refurbished LFFP sales did not constitute willful infringement.

More specifically, Fuji contends that Jazz's failure to investigate its refurbished LFFP sales after the ITC issued its initial determination supports a finding of "bad faith infringement" that is a "type of willful infringement." See Jurgens v. CBK, Ltd., 80 F.3d 1566, 1572 (Fed. Cir. 1996). The district court did not permit Fuji to reference the ITC infringement determination during the jury trial in order to avoid prejudicing Jazz. Although Fuji does not contest the district court's evidentiary ruling, it believes that the district court should have considered Jazz's lack of investigation after the ITC initial determination in its enhanced damages analysis.

Fuji has narrowly tailored its enhanced damages cross-appeal to contest damages accruing from Jazz's infringing sales between 1999 and 2001. As Fuji itself points out, the district court did not address the refurbished LFFP sales in its enhanced damages analysis, most likely because the jury did not find these sales willful. Rather, the district court considered the newly-made LFFP sales that the jury deemed willful infringement. While Fuji complains that the district court failed in its analysis, it does not point to any support in the record where it either requested the district court to consider the ITC determination in the enhanced damages inquiry or, in the alternative, to reconsider the jury finding that the refurbished LFFP sales were not willful. Fuji cannot expect the district court to consider sua sponte all factors in its favor absent Fuji's urging to do so. The district court did not abuse its discretion in its refusal to enhance damages.

03-1324,-1331                              21

On the whole, the nature of Fuji's enhanced damages cross-appeal strikes this court as a new argument that was not raised with any specificity below. Had Fuji put the trial court on notice that it sought enhanced damages for the refurbished LFFPs under its bad faith theory, the district court would have undoubtedly addressed this argument. That there is no discussion whatsoever is conspicuous given the careful and thorough analysis of the district court's opinion. This court therefore declines Fuji's request to remand so that it can refine the arguments it should previously have made. Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("[A]ppellate courts do not consider a party's new theories, lodged first on appeal. If a litigant seeks to show error in a trial court's overlooking an argument, it must first present that argument to the trial court. In short, this court does not 'review' that which was not presented to the district court.").

G.  Denial of a Permanent Injunction

The district court denied Fuji's request for permanent injunctive relief. Fuji Photo Film Co. v. Jazz Photo Corp., No. 99-2937, slip op. at 2 n.1 (D.N.J. Mar. 18, 2003). The district court determined that Fuji's proposed injunction lacked specificity and reasonable detail as required by Fed. R. Civ. P. 65(d). Id. Moreover, the district court held that even if Fuji's proposed injunctive language were more narrowly tailored it would still deny relief on three grounds:  1) the parties' discovery stipulation precluded injunctive relief for infringing activity after August 21, 2001; 2) the issues of proof would not necessarily adhere in a damages analysis for infringement after August 21, 2001; and 3) the ITC's

injunctive relief, although not co-extensive with that of the district court, subsumed the relief that Fuji sought from the district court. Id.

Generally "an injunction will issue when infringement has been adjudged, absent a sound reason for denying it." Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1227 (Fed. Cir. 1989) (citation omitted). Nevertheless, the trial court possesses broad discretion in granting injunctive relief. Odetics, Inc. v. Storage Tech. Corp., 18 F.3d 1259, 1272 (Fed. Cir. 1999). On appeal, Fuji does not provide this court with specific injunctive language but rather seeks a remand to the trial court for further fine-tuning. In the alternative, Fuji argues that specific injunctive language is not required in such a case as this where the detailed record would prevent any unwarranted contempt proceedings, citing Oakley, Inc., v. Sunglass Hut International, 316 F.3d 1331 (Fed. Cir. 2003), for support. To the contrary, as the district court recognized, this case is wrought with issues of proof surrounding the infringement issues. A future LFFP sale may or may not infringe depending on its refurbishment processes and the location of the first sale. This court need look no further than a recent proceeding before the Court of International Trade for evidence of these complexities. Jazz Photo Corp. v. United States, No. 04-00494, 2004 WL 2730143 (Ct. Int'l Trade Nov. 17, 2004). Because the proofs required for determining future infringing activity are not insignificant and not amenable to a narrowly tailored order, the district court did not abuse its discretion in denying Fuji's request for a permanent injunction.

CONCLUSION

The district court did not clearly err in weighing Jazz's evidence to determine its liability for direct infringement and correctly applied this court's <u>Jazz</u> exhaustion precedent. Substantial evidence supports the jury's finding of Mr. Benun's inducement, its reasonable royalty determination, and its willfulness finding for the newly-made LFFPs. The district court did not abuse its discretion in refusing to enhance damages and in denying Fuji a permanent injunction. Accordingly, this court affirms.

COSTS

Each party shall bear its own costs.

<u>AFFIRMED</u>