NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3284

BRIAN J. DONOGHUE

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

_____

DECIDED: January 11, 2006

_____

Before GAJARSA, DYK, and PROST, Circuit Judges.

PER CURIAM.

## DECISION

Brian J. Donoghue petitions for review of the May 27, 2005 final decision of the Merit Systems Protection Board ("Board") adopting the initial decision of the administrative judge ("AJ"). On July 9, 2004, the AJ affirmed the United States Postal Service's ("USPS") removal of Donoghue for improper conduct. Donoghue v. United States Postal Service, No. CH-0752-04-0353-I-1 (M.S.P.B. July 9, 2004). Because the

Board's decision is not arbitrary, capricious, or an abuse of discretion, is supported by substantial evidence and is otherwise in accordance with the law, we affirm the Board's decision and deny the petition.

BACKGROUND

Donoghue was the Postmaster for the USPS in Owensville, OH. On the day in question, May 13, 2003, Donoghue and a clerk, Angie Breving, were the only employees working at the Owensville Post Office.

The day before, on May 12, 2003, Postal Inspector Gary Bishop mailed a test letter to a non-existent post office box at Owensville that offered a phony promotion to win Cincinnati Reds Baseball Tickets. Inspector Bishop testified that when he mailed the letter he affixed first-class postage. The letter itself consisted of a folded card sealed with a sticker containing a detachable portion that could be filled out with the applicant's name and address and returned. Basically, the letter was undeliverable first-class mail.

Postal employees are prohibited from opening first-class mail, 39 U.S.C. § 3623(d), and Postal regulations require that all undeliverable first-class mail be sent to the Mail Recovery Center in Atlanta, GA. The reply card from the test mailer sent to Owensville, however, was filled out and signed by Donoghue and sent back to the Inspection Service on May 13, 2003. Bishop received the reply card from Donoghue on May 14, 2003.

Six months later, on November 20, 2003, Bishop and Postal Inspector Richard Dent interviewed Donoghue at the Owensville Post Office. According to Bishop, Donoghue remembered sending the reply card using his name and personal address

05-3284                                   2

but could not remember how he got the card. Bishop's investigative memorandum indicated that Donoghue stated he never took undeliverable mail for his personal use and that undeliverable first-class mail was sent to the Mail Recovery Center.

Joe Meimann, Manager of Post Office Operations, sent Donoghue a Notice of Proposed Removal on January 7, 2004 notifying him of his pending removal for improper conduct. Meimann's proposal noted that Donoghue's record had no elements of discipline. Cincinnati District Postmaster Denise D. Porter heard Donoghue's response to the removal and issued a letter of decision removing Donoghue on March 12, 2004. The letter of decision noted his 18 years of service and lack of disciplinary record but found that the seriousness of his actions outweighed this mitigating evidence.

At the hearing before the AJ, Donoghue again admitted that he filled out the test mailer but did not remember how it arrived on his desk. He testified that he did not know it came from opened mail and that he never saw the outer portion of the test letter. He supposed that the letter may have been left by a clerk or a customer. Furthermore, in a pre-hearing statement, Donoghue explained that he would have checked to see if the card came out of the mail before filling it out, and therefore he must have been comfortable enough with his alleged inquiry that he filled out the card.

Breving, the only other employee to work that day at the Owensville Post Office, testified that she did not know whether she placed the card on Donoghue's desk. She testified that her memory was poor and that if someone said she placed it there, she would believe them. Regardless, she also testified that she had never opened first-class mail even if undeliverable.

The AJ's initial decision found that it was more likely than not that the test letter

arrived undamaged at the Owensville Post Office on May 13, 2003 and that Breving and Donoghue were the only people with access to the undelivered mail that day. The AJ found Breving's testimony credible that she never opened first-class mail; therefore Donoghue was the only person with access to the test letter on May 13, 2003. Because there was no evidence to suggest the reply card was somehow separated from the test letter in the normal handling of the mail, the AJ concluded it was more likely true than not that Donoghue "opened the test letter and appropriated it for his personal use" and therefore sustained the USPS's charge of improper conduct. The AJ further held that the USPS action was taken to promote the efficiency of the service, pursuant to 5 U.S.C. § 7513(a) and that the penalty of removal was not unreasonable.

## DISCUSSION

We must affirm an MSPB decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1)-(3) (1994); accord Hayes v. Dep't of the Navy, 727 F.2d 1535, 1537 (Fed. Cir. 1984). A decision is supported by substantial evidence when "a reasonable mind might accept [it] as adequate to support a conclusion." Matsushita Elec. Industrial Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984) (citation omitted).

Donoghue makes two general arguments. First, he argues that the USPS investigation is inadequate and there was insufficient evidence that he opened first-class mail. Second, he contends that the USPS committed harmful procedural error by waiting six months to investigate the incident and by not initially interviewing Breving.

## A.    Evidence of Misconduct

The USPS has the burden of proving the improper conduct charge by a preponderance of the evidence.  5 C.F.R. § 1201.56(a).  This standard requires the USPS to prove that the charge is more likely true than not true. § 1201.56(c)(2).

Donoghue seems to suggest that the agency must present direct evidence that he actually opened the mail knowing that it was undeliverable first-class mail.  Instead, the USPS provided circumstantial evidence that the first-class letter was mailed to the Owensville Post Office, that it arrived on May 13, 2003, that the only persons with access to the undelivered first-class mail on May 13, 2004 were Donoghue and Breving, that Breving by her testimony never opened first-class mail, and that Donoghue filled out and returned the reply card on May 13, 2004.  Donoghue in his testimony submitted that he did not know how the opened letter arrived on his desk but that it did and that he would never have completed the card unless he was comfortable it was not undeliverable first-class mail.

It is not unreasonable to infer from such evidence that Donoghue opened first-class mail.  "[D]irect evidence of a fact is not necessary. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." Fuji Photo Film Co. v. Jazz Photo Corp., 394 F.3d 1368, 1374 (Fed. Cir. 2005) (citation omitted).  Here, the AJ simply chose to discredit Donoghue's testimony and give more weight to Breving's testimony that she had never opened undeliverable first-class mail.  Such witness credibility determinations are entitled to considerable deference by us and are "virtually unreviewable." See Blank v. Dep't of the Army, 247 F.3d 1225, 1228 (Fed. Cir. 2001).  We see no error in the AJ's analysis of the facts

and hold that there was substantial evidence of improper conduct.

### B. Procedural Error

Next, Donoghue argues that the USPS performed an improper investigation by waiting six months before interviewing him and never interviewing Breving. He maintains that the error was harmful.

The Board may overturn an agency decision if it "shows harmful error in the application of the agency's procedures in arriving at such decision." 5 U.S.C. §7701(c)(2)(A). Harmful error is defined by Board regulations as:

> Error by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. The burden is upon the appellant to show that the error was harmful, i.e. that it caused substantial harm or prejudice to his rights.

5 C.F.R. §1201.56(c)(3). We have recognized that some amount of time for investigation is acceptable before bringing charges of improper conduct. See Shaw v. United States Postal Service, 697 F.2d 1078, 1080 (Fed. Cir. 1983). Moreover, even if the delay is erroneous the employee must demonstrate how it substantially harms him. Id.

Donoghue's basic argument is that his and Breving's memories would have been better had the USPS interviewed them sooner. However, the lack of interviewing Breving was cured by her own testimony at the hearing. The AJ found her testimony credible that she did not open first-class mail. Further, Donoghue has not indicated what he could have testified to that would indicate someone else opened the mail. The facts demonstrate that only he and Breving had access to the undelivered mail and that Breving never opened first-class mail. The actual controversy here is the credibility of the evidence; a decision we leave to the AJ unless the petitioner can show he abused

his discretion.

The Board's decision is not arbitrary, capricious, or an abuse of discretion, it is supported by substantial evidence and is otherwise in accordance with the law. Accordingly, we affirm the Board's decision and deny the petition.

Each side shall bear its own costs.