See also, D.C., 56 F.R.D. 26.

**AMERICAN OPTICAL COMPANY and the Regents of the University of Michigan, Plaintiffs,**

v.

**Lawrence CURTISS et al., Defendants.**

**65 Civ. 627.**

United States District Court,
S. D. New York.

March 16, 1973.

Amster & Rothstein, New York City, for plaintiffs; Morton Amster, New York City, of counsel.

Fish & Neave, New York City, for defendants; W. Philip Churchill, Herbert F. Schwartz, Edward F. Mullowney, New York City, of counsel.

KEVIN THOMAS DUFFY, District Judge.

The parties to this case have been skirmishing for at least a decade over the ownership and control of certain patents. The present action was filed in 1965, and the record is replete with procedural forays back and forth between the parties. Defendants presently have moved to dismiss this action pursuant to Rule 19 of the Federal Rules of Civil Procedure for failure to join an indispensable party. A brief description of the controversy between the parties and an outline of certain previous judicial decisions in this case are necessary for an understanding of this motion.

The basic controversy between plaintiffs and defendants involves the ownership of two patents: United States Patent 3,589,793 (hereinafter the "Curtiss Patent") and United States Patent 3,010,357 (hereinafter the "Hirschowitz Patent"). These patents cover inventions which "bend" light and allow it to be transmitted from inaccessible places to the human eye and have important and lucrative application in the medical sciences. Plaintiffs, the Regents of the University of Michigan ("University") and American Optical Company ("Optical") seek to have this Court assign two-thirds of the interest in the patents to the University.[1] They contend that

---

1. This is not a suit attacking the validity of the patents, for both plaintiffs and defendants assume that the patents are valid. Rather, the crux of the suit is who is to have the ownership of these very valuable patents, with the attendant rights of licensing and exclusion.

the ownership of the patents lies properly in the University which employed and allegedly financed defendants Curtiss and Hirschowitz, and former defendant Peters during the period in which the inventions resulting in the two patents took place. Plaintiffs assert that the inventions made by the three while in their capacity as employees are owned by the University. In addition, plaintiffs seek the destruction of an agreement regarding the manufacture of the patented devices, made by Curtiss, Hirschowitz and Peters with defendant American Cystoscope Maker, Inc. ("Cystoscope").

In September of 1971, when Optical was the only plaintiff in this action, defendants (all present defendants plus Wilbur Peters, who was at that time also a defendant) moved for a dismissal under Rule 17(a) of the Federal Rules of Civil Procedure for failure of the plaintiff to prosecute this action in the name of the real party in interest. Judge Ryan in December of 1971, granted the motion of defendants, finding that the transfer of the interest in the suit from the University to Optical was a violation of the New York Penal Law in that it was champertous.[2] However, he reserved the dismissal pending the possible joinder of the University held to be the real party in interest. Plaintiff, Optical, thereafter moved this Court for leave to amend the complaint to add the University, a Michigan resident, as a plaintiff, and (in order to preserve diversity jurisdiction under 28 U. S.C. § 1332) to drop Peters, also a Michigan resident, as a defendant. Judge McLean granted the motion, stating:

"The court does not consider Peters to be so indispensable a party that the action cannot proceed in his absence." Memorandum of May 3, 1972.

The issue of Peters' indispensability has been raised directly by defendants' present motion. Plaintiffs strongly urge this Court to deny this motion. They argue that the doctrine of the law of the case precludes redetermination of Peters' indispensability, previously decided by Judge McLean in his memorandum of May 3, 1972.

The doctrine of the law of the case was for many years strictly adhered to in the Second Circuit. Commercial Union of America, Inc. v. Anglo-South American Bank, Ltd., 10 F.2d 937 (2nd Cir. 1925). Underlying this doctrine was the policy that an issue once litigated and determined should not be resuscitated; rather the litigants ought to be able to rely on such a decision. The Second Circuit in Dictograph Products Company v. Sonotone Corporation, 230 F.2d 131 (2nd Cir. 1953) expressly overruled Commercial Union of America, Inc. v. Anglo-South American Bank, Ltd., 10 F.2d 937, *supra,* and with it the principle of strict adherence to the law of the case.[3] Judge Hand, speaking for the Court, stated that there was "no imperative duty to follow [an] earlier ruling—only the desirability that suitors shall, so far as possible, have reliable guidance how to conduct their affairs." 230 F.2d at 135.

In a later case, Bertha Building Corp. v. National Theatres Corp., 269 F.2d 785 (2nd Cir. 1959) cert. den., 361 U.S. 960, 80 S.Ct. 585, 4 L.Ed.2d 542 (1960), the Second Circuit, by way of dictum, made it clear that "even when an issue has been decided by a district judge, another judge of the same court may nevertheless come to a different conclusion."

2. Reference should be made to Judge Ryan's unreported memorandum and order of December 4, 1971, for a complete description of the activities of Optical and the University that led him to his conclusion that unlawful activity had occurred.

3. The doctrine of the law of the case is still vigorously applied in several circuits, *e. g.,* TCF Film Corporation v. Gourley, 240 F.2d 711 (3rd Cir. 1957) ; United States v. Koenig, 290 F.2d 166 (5th Cir. 1961) aff'd DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962).

269 F.2d at 787. Subsequently, there have been numerous instances when district judges have redetermined an issue which one of their colleagues previously decided. Chain Locations of America, Inc. v. East Hudson Parkway, 280 F. Supp. 396 (S.D.N.Y.1967), and Goldstein v. Doft, 236 F.Supp. 730 (S.D.N.Y. 1964), aff'd 353 F.2d 484 (2nd Cir. 1965) cert. den. 383 U.S. 960, 86 S.Ct. 1226, 16 L.Ed.2d 302 (1965).

■ Thus, this Court does not feel constrained to accept the implicit decision of Judge McLean as to Peters' dispensability. Rather, this Court must evaluate the issue anew.

■ The Supreme Court, in the landmark decision of Shields v. Barrow, 58 U.S. (17 How.) 130, 15 L.Ed. 158 (1854), held that certain parties were so indispensable that an action could not go on in their absence.[4] See Matthies v. Seymour Mfg. Co., 270 F.2d 365 (2nd Cir. 1959), cert. den. 361 U.S. 962, 80 S. Ct. 591, 4 L.Ed.2d 554 (1960). Indispensability was described in the following way:

"Persons [are indispensable] who not only have an interest in the controversy but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and conscience." 58 U.S. (17 How.) at 139.

In 1937, when law and equity were merged, Rule 19 of the Federal Rules of Civil Procedure was promulgated which codified the principle of indispensability. Recently, in 1966, the Rule was totally redrafted; however, the intent of the revision was not to break with the traditional notions previously articulated by the courts. Provident Tradesmen's Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

■ There is a two-part test set out in Rule 19 to determine whether a party is merely necessary or indispensable. Section (a) of Rule 19 sets the standard by which to judge whether a party is needed at all for a just adjudication. If it is determined that a party is needed for adjudication but his joinder would destroy diversity, then Section (b) of Rule 19 must be consulted. It lays the grounds upon which to decide whether to proceed in the action or to dismiss it. It can hardly be disputed that Peters is a proper party within the ambit of Section (a). Peters, pursuant to an agreement made with Curtiss and Hirschowitz, was given a one-third interest in the two patents and, at the time of the granting of the patents, the patent office named Peters as a co-owner along with Curtiss and Hirschowitz. In a suit to determine the ownership of the patents, certainly all of the alleged original owners are proper parties.

Further, plaintiffs seek to have destroyed a "license" agreement whereby Peters, Hirschowitz and Curtiss licensed Cystoscope to manufacture and sell the devices covered by the Hirschowitz and Curtiss patents. It cannot be suggested that Peters would not be proper in an action seeking to cancel such agreement. Destruction of the license would, of necessity, eliminate his presently existing right to receive royalties, as well as the rights of the two named defendants. In addition, it should be noted that Optical, in structuring the original complaint, included as defendants all of the co-owners, including Peters. I find, therefore, that Peters is a proper party to this action.

---

4. Dismissal for failure to join an indispensable party, contrary to some judicial decisions, is not required because of a lack of jurisdiction on the part of the Court. Rather, it is a result of a notion of fundamental fairness implicit in our jurisprudence which prevents courts from exercising their jurisdiction when a particular party is absent.

■ Thus, this Court reaches the key question, whether Peters is indispensable or merely necessary under Rule 19(b). Each determination as to whether to discontinue an action minus a party or to go ahead, is the result of a balancing of several factors. Rule 19(b) lays out these factors. First, a court must consider the prejudice to the absent party in going ahead. Second, the court must divine to what extent a close and careful shaping of relief in the action will mitigate the prejudice to the absentee. Third is the question, whether the judgment rendered will be adequate and viable. Lastly, the court must consider the prejudicial effect on the plaintiff if it is dismissed. Such prejudice is, of course, substantially diminished if there is an alternative forum open to all parties. As Professor Moore in his treatise on Federal Practice has succinctly pointed out, this last factor is relevant but not conclusive. If the court is compelled to find a party indispensable, it matters not that the action is effectively stopped by such a determination.

Plaintiffs argue that none of the three original owners is indispensable because Cystoscope is an assignee of the three and as such is the only indispensable party to an action testing the ownership of a patent. Plaintiffs cite several cases dealing not with the ownership of patents but with their validity to support this proposition.[5]

■■ It has been clear since Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891) that an assignee alone, can sue and be sued regarding the validity of a patent or its infringement. The original owner or assignor is not an indispensable party. In Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891), assignments and licenses are differentiated in the following way:

"The patentee or his assigns may, . . . assign, grant, and convey, either (1) the whole patent, comprising the exclusive right to make, use, and vend the invention throughout the United States; or (2) an undivided part or share of that exclusive right or (3) the exclusive right under the patent within and throughout a specified part of the United States . . . A transfer of either of these three kinds of interests is an assignment properly speaking, and vests in the assignee a title in so much of the patent itself with a right to sue infringers. In the second case, jointly with the assignor. In the first and third cases, in the name of the assignee alone. Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law." 138 U.S. at 255, 11 S.Ct. at 335.

5. It is not at all clear that the case law setting the standard for determining whether a transfer of rights from a patent owner to another is a license or an assignment making the owner dispensable or indispensable, in the context of a case regarding the validity of a patent, can appropriately be applied in a case where the issue is the ownership of the patent, not its validity. The reason that different standards may well apply is that the interest of the owner is significantly greater in the case where the ownership of the patent is at issue. In a suit concerning the validity of a patent, the most onerous result for the owner is his loss of the right to exclude the rest of the world from use of the patent except those he

licenses or assigns. The owner, regardless of the outcome of the suit, does not face the possibility of loss of his ability to use the device. In the case where the issue is the ownership of the patent, the owner (assignor-licensor) potentially stands to lose not only his ability to exclude others and receive royalties, but also he himself may be absolutely excluded from using the device. It therefore seems reasonable that courts should be more reluctant to find an owner dispensable in suits concerning ownership. The Court finds it unnecessary to decide what those standards would be, for in this case Peters is indispensable under the tests as set forth in the cases dealing with the validity of a patent.

The question thus becomes whether the agreement here is an assignment or merely a license. Plaintiffs cite several cases which, they assert, indicate that the agreement here is an assignment and not a license. The value of precedent in this area is limited, for a determination as to whether an agreement is a license or an assignment depends upon the extent to which the particular language of the agreement in question transfers rights and duties from the one party to the other. Plaintiffs rely heavily on the decision in Hartford National Bank & Trust Co. v. Henry L. Crowley & Co., 118 F.Supp. 899 (D.N.J.1954), aff'd 219 F.2d 568 (3rd Cir. 1955), in which the court found that an agreement labelled a license was, in fact, an assignment. As a result, the owner of the patent was properly absent from a suit concerning the validity of the patent.

Plaintiffs argue that the "license" in question here does not differ in any substantial way from that in the *Hartford* case and that, therefore, it must be found to be an assignment. I reach a different conclusion and find that the agreement is, in effect, merely an exclusive license.

The agreement of January 1, 1958,[6] indicates the retention of substantial rights on the part of the three original owners. Unlike the agreement in the *Hartford* case, the agreement here in question demonstrates that the three owners, retained substantial rights of prosecuting infringement claims for their own benefit when the licensee opts not to pursue such alleged infringers. Further, the licensors retained the right to prosecute patent applications, a right not dealt with in the *Hartford* agreement. Lastly, the three licensors retained substantial rights of cancellation

not retained in the *Hartford* agreement. Also militating against reaching a result similar to the one stated in the *Hartford* case and in 'Pennsalt Chemicals Corp. v. Dravo Corp., 240 F.Supp. 837 (E.D.Pa. 1965) is the fact, mentioned by the courts in both those cases, that the absent party could protect his rights by intervening if he so desired. That is, of course, not the case here. The agreement is therefore not an assignment. (See Dynatech Corp. v. Frigitronics, Inc., 318 F.Supp. 851 (D.Conn.1970).

Since Cystoscope is merely a licensee, this Court must turn to the vexing question whether all co-owners of a patent are indispensable in an action to compel transfer of two-thirds ownership interests in the patent to a third party.

In assessing the indispensability of Peters, the inquiry must focus on the harm done to his one-third interest if the Court should grant, in his absence, the transfer of the other two-thirds interest in the patent to the University. *Cf.* Kerr v. Compagnie De Ultramer, 250 F.2d 860 (2nd Cir. 1958). Under 35 U. S.C. § 262, a joint owner of patent, absent an agreement to the contrary, has an absolute right to make, use, and sell the device covered by the patent, without accounting to his co-owners. At first blush, because of these rather substantial and absolute rights given a co-owner of a patent, it would seem that a court could adjudicate the rights of some of the co-owners without affecting the other co-owner's rights. However, upon closer inspection, it appears that just the contrary is true. There would be substantial, even irreparable, damage done to Peters' one-third ownership interest. The University has stated its intention to dedicate the patents to the public, indicating the likelihood that the University would grant licenses royalty-

6. The agreement of January 1, 1958 was amended by letter dated October 19, 1961, and by letter dated January 12, 1962. Neither of these amendments altered the rights retained by the three owners but merely changed the method and manner of the payment of royalties and more explicitly described the inventions covered.

free to any party who so desires.[7] Clearly, the University, as a two-thirds co-owner, would, under 35 U.S.C. § 262, have the absolute power to do this. If the University were to so act, Peters' right of licensing would become superfluous. There is little possibility that a licensee would pay Peters for a license when he could receive the same thing free from the University. Peters is, at the present time, entitled to royalties from defendant Cystoscope. The potential loss of royalties is not mere speculation.

In addition, Peters would lose his ability to sue for infringement. It has been well established law since Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891), that a co-owner cannot sue for infringement of his patent without the joinder of the other co-owners. Union Trust National Bank v. Audio Devices, Inc., 295 F.Supp. 25 (S.D. N.Y.1969); Bendix Aviation Corporation v. Kury, 88 F.Supp. 243 (E.D.N.Y. 1950). At the present time, Peters, Curtiss and Hirschowitz have agreed that each of the three must join to allow suits for infringement to be prosecuted. Given the University's disposition to grant licenses to anyone desiring them, it seems unlikely that it would be willing to join in prosecuting alleged infringers.[8]

The very basis of a patent is the right of the owner or assignee to exclude the entire world from use, except those to whom the owner or assignee grants a license, normally for a fee or royalty. If this Court were to allow the disposition of this case without Peters and if plaintiff were to win control of two-thirds ownership, the very basis of Peters' patent ownership would be undercut. At the present time, there is a community of interest among the three owners to jointly pursue infringers and share royalties. Destruction of this unity of interest by substituting the University would rob Peters of all but nominal indices of ownership. No longer could he obtain royalties, nor could he exclude others from use.

Plaintiffs, as has been stated above, also seek to have the Court destroy the license agreement made by the three owners with American Cystoscope Maker, Inc. It seems clear that Peters must be present before the Court could grant this relief. Since the decision in Shields v. Barrow, 58 U.S. (17 How.) 130, 15 L. Ed. 158 (1854), the courts have found that in actions to rescind or to cancel contracts, all the parties to those contracts are indispensable. See Ward v. Deavers, 92 U.S.App.D.C. 167, 203 F.2d 72 (1953). In Spanner v. Brandt, 1 F. R.D. 555 (S.D.N.Y.1941), the plaintiff sought to have a contract for the sale of patent rights from the original inventors to a third party set aside and cancelled. The court, in finding the inventor group was indispensable, said,

"It is obvious that from a mere reading of the prayer for relief, the plaintiff seeks to adjudicate the rights of the Inventor Group who are not parties to this proceeding. Actions seeking cancellation of contracts cannot be

---

7. At an October meeting in 1964, the Regents of the University of Michigan transferred their rights in the patents to Optical on the condition that such patents would be dedicated to the public. Regardless of the continuing validity of that transfer, this is a clear expression of the University's lack of interest in acquiring a financial gain from the licensing of these patents. Thus, I conclude that there is great probability that if the University were to succeed that it would grant free licenses to any that desired them.

8. There is a paucity of law concerning the power of one patent co-owner to compel the joinder of another co-owner under Rule 19(a) of Federal Rules of Civil Procedure. The only two cases dealing directly with this issue have held that a co-owner cannot compel joinder of another co-owner. Rainbow Rubber Co. v. Holtite Mfg. Co., 20 F.Supp. 913 (D.Md.1937), and Gibbs v. Emerson Electric Mfg. Co., 29 F.Supp. 810 (W.D.Mo.1939). Thus, it appears that Peters would be without the power to compel the University to join suit for infringement.

permitted unless all the parties to be affected by a decree shall be before the court." 1 F.R.D. at 557

It seems self-evident that a decree of cancellation of an agreement will inevitably affect all parties to such an agreement and, therefore, all parties should be present. Thus, Peters would appear to be indispensable if this Court is to adjudicate the present validity of the agreement of January 1, 1958.

Given the nature of the prejudice to Peters, it is evident that relief in this action could not be shaped to prevent prejudice to him and at the same time avoid the handing down of an absolutely ineffective judgment. Thus, the Court inevitably is forced to dismiss this suit. It is a most radical result, but one which in equity and good conscience cannot be avoided.

Settle order on notice.