This Opinion is not a
Precedent of the TTAB

Mailed: March 19, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*Southernties, LLC*
*v.*
*C.O. Branded Corporation*

Opposition No. 91227287

————

*C.O. Branded Corporation*
*v.*
*Southernties, LLC*

Cancellation No. 92062183

————

Taylor M. Norton and Thomas E. Lemler of Norton IP Law Firm
　　for Southernties, LLC

Tracy A. Marion of Lanier Ford Shaver & Payne P.C.
　　for C.O. Branded Corporation

————

Before Taylor, Wellington, and Shaw,
　　Administrative Trademark Judges.

Opinion by Wellington, Administrative Trademark Judge:

This decision involves the following two proceedings:[1]

---

[1] On July 13, 2016, the Board granted a consented motion to consolidate Opposition No. 91227287 and Cancellation No. 92062183. 6 TTABVUE. The opposition proceeding was designated the "parent proceeding," and the parties were informed that future filings should

**Cancellation No. 92062183 (and counterclaims)**

On September 2, 2015, C.O. Branded Corporation ("COBC") filed a petition to cancel a registration (Reg. No. 4462572) owned by Southernties, LLC (Southernties) for the mark:



(hereinafter "Southernties' left-facing pelican mark") for "neckties" in Class 25 on the ground of priority and likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).[2]

COBC's claim is based on its pleaded prior common law rights and registration of its mark:



(hereinafter COBC's "pelican with wording mark") for "wearable clothing and personal accessories, namely, hats, and shirts" in Class 25.[3] The wording in this mark is: MOBILE BAY BY CHARLES OLIVER.

---

be filed in parent proceeding only. Accordingly, unless otherwise specified, all TTABVUE references in this decision are to the Board's docket entries in Opposition No. 91227287.

[2] Reg. No. 4462572 issued January 7, 2014. Southernties was required to file a Declaration of Use and/or Excusable Nonuse, under Section 8 of the Act, prior to January 7, 2020, in order to avoid cancellation of this registration. The registration is currently in a six-month grace period status (for filing the declaration) that ends on July 7, 2020. *See* 15 U.S.C. § 1058.

[3] Reg. No. 4493435 issued March 11, 2014. The Section 8 declaration (see Note 2) is due March 11, 2020, with a six-month grace period extending this time to September 11, 2020.

COBC also asserts prior use and common law rights in its pelican design mark:



(hereinafter COBC's "pelican mark").[4] COBC alleges that it has "has been engaged in since at least September 19, 2011, and continues to be engaged in, the business of selling clothing, including shirts, hats, shorts, and other items of clothing, identified by both [pleaded marks]."[5]

Southernties filed an answer denying that a likelihood of confusion exists between its registered left-facing pelican mark and COBC's pleaded marks.[6] Southernties alternatively pleads, however, that if confusion is found to be likely between the involved marks, it "has priority over Petitioner's two noted Marks pursuant to the jurisprudence of tacking, as more fully set forth herein and in the following Counterclaims."[7] In its answer with counterclaims, Southernties pleads ownership of the following registered marks:[8]

---

[4] Application Serial No. 86689853, filed July 10, 2015, based on Applicant's claim of first use anywhere and in commerce on September 19, 2011, pursuant to Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a). The mark is described in the application as "a side view of a pelican facing to the right against a rectangular background that is not claimed as a feature of the mark; the shades of gray are likewise not claimed as a feature of the mark, instead representing background or shading."

[5] 1 TTABVUE 8 (Cancellation No. 92062183); Petition for Cancellation ¶ 19.

[6] 8 TTABVUE 8 (Cancellation No. 92062183); Answer ¶¶ 5-13 (set forth as "Affirmative Defenses").

[7] *Id.* at 10, ¶ 17.

[8] We note that many of the registrations listed were in application status at the time of filing the answer, but have since registered. As discussed, infra, copies of the registrations that matured from the pleaded applications have been introduced and are of record. One pleaded application (Ser. No. 77159619 for the mark COASTAL COLLECTION) was abandoned.

1.  (hereinafter Southernties' "right-facing pelican mark") (Reg. No. 4988700) for "clothing, namely, neckties and t-shirts" in Class 25.[9]

2. PELICAN COAST (Reg. No. 2031348) for "neckties" in Class 25;[10]

3.  (Reg. No. 4988686) for "neckties" in Class 25;[11]

4.  (Reg. No. 4988697; CLOTHING COMPANY disclaimed) for "clothing, namely, polo shirts, button-down shirts, shorts, and hats" in Class 25;[12] and

5. (Reg. Nos. 4462572 and 4988701) for, respectively, "neckties" in Class 25, and "clothing, namely, shorts, pants, polo shirts, button-down shirts, fishing shirts, t-shirts, fishing shorts, fishing pants, belts, and hats" in Class 25.[13]

---

[9] Reg. No. 4988700 issued June 28, 2016.

[10] Issued May 6, 2008; renewed.

[11] Issued June 28, 2016.

[12] Issued June 28, 2016.

[13] Reg. No. 4462572 issued January 7, 2014. Southernties was required to file a Declaration of Use and/or Excusable Nonuse, under Section 8 of the Act, prior to January 7, 2020, in order to avoid cancellation of this registration. The registration is currently in a six-month grace period status (for filing the declaration) that ends on Jul 7, 2020. *See* 15 U.S.C. § 1058.

Southernties asserts a compulsory counterclaim against COBC's pleaded registration, as well as permissive counterclaims against four additional COBC-owned registrations. In sum, the registrations Southernties seeks to cancel by way of the counterclaims are:

1.  (Reg. No. 4493435, Southernties' pleaded registration);

2. MOBILE BAY in standard characters (Reg. No. 4511688) for "wearable clothing and personal accessories, namely, hats, and shirts" in Class 25;[14]

3. MOBILE BAY BY CHARLES OLIVER in standard characters (Reg. No. 4487084) for "wearable clothing and personal accessories, namely hats, and shirts" in Class 25;[15]

4.  (Reg. No. 4745980) for "wearable clothing, namely, hats and shirts; all the foregoing not relating to baseball or softball or a baseball or softball team, league, mascot or stadium" in Class 25;[16] and

---

Reg. No. 4988701 issued June 28, 2016.

[14] Issued April 8, 2014. The Section 8 declaration (see Note 13) is due April 8, 2020, with a six-month grace period extending this time to October 8, 2020.

[15] Issued February 25, 2014. The Section 8 declaration (see Note 9) is due February 25, 2020, with a six-month grace period extending this time to August 25, 2020.

[16] Issued June 2, 2015. The mark is described in the registration as "consist[ing] of a gingham bow tie with flaps and the phrase SOUTHERN TIGER underneath the bow tie."

On December 7, 2015, COBC filed a Section 7 voluntary surrender of this registration with the Office's Post Registration branch. In an Office Action issued on January 5, 2016, Post Registration denied the request to surrender and allowed COBC time to respond, failing which the Section 7 surrender would be considered abandoned. Office records do not reflect that such a response from COBC was filed. Thus, the Section 7 surrender is considered abandoned. 37 C.F.R. § 2.176.

5. (Reg. No. 4533032) for "wearable clothing, namely, hats and shirts" in Class 25.[17]

Southernties' counterclaims are based on allegations setting forth one or more grounds for cancellation against each of the above registrations owned by COBC, including: priority and likelihood of confusion, primarily geographically descriptive, primarily geographically deceptively misdescriptive, fraud, non-ownership of the mark, nonuse of the mark in commerce, and abandonment.

COBC denies the salient allegations regarding the counterclaim grounds for cancellation.[18]

**Opposition No. 91227287**

On April 8, 2016, and after the cancellation proceeding was instituted, Southernties filed a notice of opposition to registration of COBC's right-facing pelican mark (Application Serial No. 86689853).[19] Southernties essentially reiterates its stance as defendant in the cancellation proceeding and alleges that it does not believe the involved marks and goods are confusingly similar, but "if they are likely to cause

---

[17] Issued May 20, 2014. The mark is described in the registration as "consist[ing] of a gingham bow tie with flaps." A Section 8 declaration (see Note 13) is due May 20, 2020, with a six-month grace period extending this time to November 20, 2020.

On the same dates as the previous registration (*See* Note 16), COBC filed a Section 7 voluntary surrender for this registration that was also denied by the Office's Post Registration branch, and this Section 7 surrender is considered abandoned too.

[18] 9 TTABVUE (Cancellation No. 92062183).

[19] 1 TTABVUE.

confusion,"[20] Southernties should prevail based on prior use of its registered right-facing pelican mark:



(Reg. No. 4988700; Southernties' "right-facing pelican mark") for "clothing, namely, neckties and t-shirts" in Class 25. Southernties alleges that it has continuously used its right-facing pelican mark since May 31, 2007.

In its answer, COBC denies the salient allegations of the Notice of Opposition and asserts several affirmative defenses, including unclean hands and estoppel.[21] COBC also alleges, as an affirmative defense, that Southernties' claims are barred by COBC's ownership and prior use of the marks in Reg. Nos. 4493435; 4511688; and application Ser. No. 86689853.[22]

The consolidated proceedings have been briefed and are presented on the same record.

## I. The Record

The record includes the pleadings in each of the consolidated proceedings. Pursuant to Trademark Rule 2.122, 37 C.F.R. § 2.122(b), the record also includes the files for the application subject to the opposition and the registrations subject to the

---

[20] *Id.* at 11 (Notice of Opposition ¶ 21).

[21] 4 TTABVUE.

[22] Southernties, in its Answer, did not identify either the marks or goods covered by the registrations and application.

cancellation and counterclaims.

Southernties submitted the initial testimonial and rebuttal declarations, with exhibits, of Joseph Maxwell, Southernties' Managing Member;[23] and a notice of reliance on various materials, including COBC's interrogatory responses, archived Southernties' website screenshots, the involved registration and application file history printouts, and copies of Internet and print materials.[24]

COBC submitted the following: the affidavit and testimonial declaration, with exhibits, of Michael T. Clark, COBC's Vice-President of Operations;[25] and the rebuttal declaration, with exhibits, of Robert C. Lake, Jr., an "Initial Director" of COBC.[26]

## II. Standing

Standing is a threshold issue that must be proven by the plaintiff in every inter partes case. *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 1401 (2015); *John W. Carson Found. v. Toilets.com Inc.*, 94 USPQ2d 1942, 1945 (TTAB 2010). That is, both COBC and Southernties, as plaintiffs in the respective proceedings, must each show they have standing by showing a real interest in the outcome of the respective proceeding and a reasonable basis for believing that it would suffer damage if the

---

[23] 31-33 TTABVUE (initial testimonial declaration) and 45 (rebuttal declaration).

[24] 34-37 TTABVUE.

[25] 14-22 TTABVUE (affidavit with exhibits filed August 7, 2017) and 39-44 TTABVUE (declaration with exhibits filed February 12, 2019).

[26] COBC also filed a notice of reliance (23 and 38 TTABVUE) on copies of its registrations and application which was unnecessary because they are, by rule, of record inasmuch as they are the subjects of the opposition and counterclaims. Trademark Rule 2.122.

respective adversary's mark is (or remains) registered. *See* 15 U.S.C. § 1063; *Empresa Cubana Del Tabaco*, 111 USPQ2d at 1062. A "real interest" is a "direct and personal stake" in the outcome of the proceeding. *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1026 (Fed. Cir. 1999).

Given the positions of the parties in the two proceedings, it is clear that each party has a direct and personal stake in the outcome of the proceedings. Neither party has contested the standing of the other party to bring their respective claims. Both COBC and Southernties own registrations for marks with a stylized pelican or the word PELICAN in connection for clothing or neckties. We further note that Southernties' counterclaim against COBC's pleaded registration is a compulsory counterclaim and its standing is inherent; it "need not allege its standing to challenge the pleaded registrations." *Finanz St. Honore B.V. v. Johnson & Johnson,* 85 USPQ2d 1478, 1479 (TTAB 2007); *see also Carefirst of Md., Inc. v. FirstHealth of the Carolinas, Inc.*, 77 USPQ2d 1492 (TTAB 2005); *Bankamerica Corp. v. Invest Am.*, 5 USPQ2d 1076, 1078 (TTAB 1987) (defendant seeking to cancel pleaded registration on ground of descriptiveness or genericness in an opposition based on likelihood of confusion need not allege that it has an interest in using the term sought to be cancelled). The remaining "permissive" counterclaims are also contemplated and allowed under Fed. R. Civ. P. 13(b). See also TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 313.05 (2019) ("Permissive Counterclaims"). Accordingly, COBC and Southernties have standing to bring their respective claims.

### III.  Southernties' Right-Facing Pelican Mark -- Tacking and Priority

A key point of contention in these consolidated proceedings is Southernties' ability to "tack" its earlier-used, right-facing pelican mark to its later-adopted left-facing pelican mark. Southernties, as it pleaded in the opposition and counterclaims, contends that for purposes of priority it may rely on the earlier use date of its right-facing pelican mark and that this date should extend to its left-facing pelican mark, because the marks are "legal equivalent(s)."[27]

Southernties asserts that its predecessor-in-interest, Pelican Coast LLC, (PCL) began using the right-facing pelican mark,        , in May 2007 and that these prior rights in this mark were conveyed to Southernties from PCL through a series of agreements that include a nun pro tunc assignment executed in 2013. Southernties argues that "tacking" is applicable here because the right-facing pelican mark is the legal equivalent of its left-facing pelican mark,        , noting that both marks depict "pelicans with long beaks tucked down" and that the latter is "the digitized version of the original hand-sketched [right-facing] pelican."[28]

COBC does not dispute the assignment of the right-facing pelican mark to Southernties. Indeed, the record establishes that PCL began using the right-facing

---

[27] 47 TTABVUE 27-28.

[28] Id. at 28.

pelican mark at least as early as May 31, 2007 on ties, and all rights in the mark have been conveyed to Southernties.[29]

Although we find that Southernties is the owner of the right-facing pelican mark, its ability to "tack" this mark, along with the priority date, to the later-adopted, left-facing pelican mark is a different matter.

The Supreme Court described tacking in *Hana Fin., Inc. v. Hana Bank,* 574 U.S. 418, 113 USPQ2d 1365 (2015):

> Recognizing that trademark users ought to be permitted to make certain modifications to their marks over time without losing priority, lower courts have provided that, in limited circumstances, a party may clothe a new mark with the priority position of an older mark. This doctrine is called "tacking," and lower courts have found tacking to be available when the original and revised marks are "legal equivalents" in that they create the same, continuing commercial impression.

574 U.S. at 419-420; *see also Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 17 USPQ2d 1866, 1869, 926 F.2d 1156 (Fed. Cir. 1991). In reviewing a circuit court decision involving tacking, the Supreme Court in *Hana* acknowledged the court's explanation that tacking applies in "exceptionally narrow circumstances," 574 U.S. at 421

---

[29] Southernties witness, Joseph Maxwell, testified that PLC began use of the mark on neckties and clothing as of May 31, 2007, and that pursuant to a December 28, 2012 "Asset Purchase Agreement," Southernties acquired PLC's "inventory, goodwill, customer lists, tradename, trademark and logo." 31 TTABVUE (Maxwell dec. ¶¶ 5-7; Maxwell Exhib. 19 (copies of agreements between Southernties and Pelican Coast LLC). The record includes copies of invoices for sales of neckties for the years 2007-2012 (32 TTABVUE; Maxwell Exhibs. 15-19, designated "confidential") and photographs showing use of the mark on the goods (35 TTABVUE 160, 165; Notice of Reliance Exhib. 8). Although Maxwell testified that its mark has been used on clothing since 2007, the invoices and other material evidence do not show prior use of the mark on any goods other than ties. That is, the evidence of use by PCL, including invoices and archived website screenshots, indicates the mark was used by PCL only in connection with neckties. Accordingly, we do not find prior use of the mark by Southernties in connection with clothing.

(internal cite omitted). Indeed, the Board has long held that tacking is not common because it is held to a "strict standard" and is "available only where the previously used mark is 'the legal equivalent of the mark in question or indistinguishable therefrom, and the consumer should consider both as the same mark.'" *Anthonys Pizza & Pasta Int'l, Inc. v. Anthonys Pizza Holding Co., Inc.*, 95 USPQ2d 1271, 1276 (TTAB 2009) (quoting *Van Dyne-Crotty*, 17 USPQ2d at 1868); *see also Be Sport, Inc. v. Al-Jazeera Satellite Channel,* 115 USPQ2d 1765, 1768 n.8 (TTAB 2015). Moreover, as the Board pointed out in *Van Dyne-Crotty*, "the standard of legal equivalence used in reviewing efforts to 'tack' the prior use of one mark onto that of another is higher than that used in evaluating two competing marks. ... [E]ven if the two marks are confusingly similar, they still may not be legal equivalents." *Van Dyne-Crotty,* 17 USPQ2d at 1868-1869. It is also the burden of the party that seeks to benefit from tacking to prove by a preponderance of the evidence that the involved marks are legal equivalents.

In this case, we find that the following two marks:

 and

are not legal equivalents for purposes of tacking. Although both marks depict pelicans, we initially point out that one is facing right and the other is facing left. In addition, there is more detail in the wing feathers in Southernties' right-facing pelican mark and it has longer legs and feet. This contrasts with the less-defined wing of the left-facing pelican mark that also has shorter, flat feet. The left-facing pelican

also has a neck bending backwards and a bill that curves around its midsection. While these distinctions appear to be minor or not readily noticeable, we hasten to add that we are applying the stricter standard necessary for determining whether the marks are legal equivalents. Ultimately, given the sum of the differences we find the marks will not make an identical commercial impression on consumers in connection with the involved goods.

In terms of priority and for purposes of the likelihood of confusion claims, however, Southernties may rely on the May 2007 date of first use for its right-facing pelican in connection with neckties. Indeed, we point out that this mark has priority over all of COBC's marks. COBC does not argue an earlier use date for any of its marks, but asserts that they were first used the mark in 2011.[30]

We turn now to the merits of the various claims and counterclaims. In doing so and for sake of simplicity, we address the marks being challenged on an individual basis.

## IV. Southernties' Opposition to COBC's registration of Its Pelican Mark Based on Likelihood of Confusion

We begin with Southernties' opposition to COBC's application for registration of the pelican mark, (Opposition No. 91227287). In the notice of opposition and as described above, Southernties pleaded an alternative likelihood of confusion claim against COBC's mark based, in part, on Southernties' prior rights in its registered

---

[30] 48 TTABVUE 11.

right-facing pelican mark, . That is, although Southernties does not agree

that that the involved marks and goods are confusingly similar, but if they are then

Southernties should prevail based on its prior use its registered right-facing pelican

mark.[31] Because Southernties' registration for its right-facing pelican has been made

of record and COBC has not sought to cancel this registration,[32] priority is not at

issue for this mark and the goods covered by this registration vis-à-vis COBC's

pelican mark that is subject of the opposition.[33] *See King Candy, Inc. v. Eunice King's*

*Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974). *See also Coach Servs. Inc.*

*v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1727-28 (Fed. Cir.

2012).

In determining the likelihood of confusion, we must analyze all of the probative

facts in evidence that are relevant to the factors set forth in *In re E.I. du Pont de*

---

[31] As discussed later in this decision, the alternative condition is met inasmuch as we find that confusion is likely between Southernties registered left-facing pelican mark and COBC's pelican marks.

[32] In the "conclusion" section of its brief, COBC asserts that Southernties' registration for its right-facing pelican mark (as well as Southernties' Reg. No. 4988701) should be cancelled. 48 TTABVUE 37. However, COBC did not plead a claim to cancel either of these two registrations. Southernties objects and asserts that the "request was not previously pled, no amended pleading was filed, leave of court was never requested to file an amended pleading, no trial took place, and Southernties did not have an opportunity to take discovery and submit testimony regarding this new request for relief." 49 TTABVUE 20-21. Because the request to cancel Southerties registration constitutes an unpleaded claim that has not been tried by the consent of the parties, it is impermissible and we give the request no further consideration. Fed. R. Civ. P. 15; *see also* TBMP § 314.

[33] 35 148-154 (Southernties' Notice of Reliance Exh. 7).

*Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973); *see also Zheng Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 127 USPQ2d 1797, 1800 (Fed. Cir. 2018) (*DuPont* "articulated thirteen factors to consider when determining likelihood of confusion"). "'Not all of the *DuPont* factors are relevant to every case, and only factors of significance to the particular mark need be considered,'" *id. (quoting In re Mighty Leaf Tea*, 601 F.3d 1342, 94 USPQ2d 1257, 1259 (Fed. Cir. 2010)); *M2 Software, Inc. v. M2 Commc'ns, Inc.*, 450 F.3d 1378, 78 USPQ2d 1944, 1947 (Fed. Cir. 2006) (even within *DuPont* list, only factors that are "relevant and of record" need be considered). Two key considerations are the similarities between the marks and the similarities between the goods. *See In re i.am.symbolic, llc*, 866 F.3d 1315, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017) (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976). We have also considered other *DuPont* factors for which there is argument and evidence.

1. Identity and Relatedness of the Goods, Their Trade Channels and Classes of Purchasers

We first consider the second *DuPont* factor involving the "similarity or dissimilarity and nature of the goods or services as described in an application or registration." *DuPont*, 177 USPQ at 567. It is well-settled that the issue of likelihood of confusion between applied-for and registered marks must be determined on the basis of the services as they are identified in the involved application and registration. *Canadian Imperial Bank of Commerce v. Wells Fargo Bank, N.A.*, 811 F.2d 1490, 1

USPQ2d 1813, 1815 (Fed. Cir. 1987); *Paula Payne Prods. Co. v. Johnson Publ'g Co.,* 473 F.2d 901, 177 USPQ 76, 77 CCPA 1973).

Southernties' registration for its right-facing pelican mark covers "neckties and t-shirts," and COBC's application is for "hats and shirts." Because as identified Southernties' "t-shirts" are encompassed by COBC's broader term "shirts," the involved goods are legally identical in part.

We also find that neckties are, by their nature and purpose, closely related to shirts. Although neither party points to any evidence to demonstrate such a relationship, we take notice that neckties are clothing accessories to be "worn around the neck and tied in a knot or bow close to the throat," often by men around the collar of a dress shirt for a formal appearance.[34] COBC's "shirts" includes all types of shirts and we must presume this includes dress shirts. Indeed, a necktie is a complementary apparel accessory that can be matched with a shirt for purposes of creating a fashionable appearance.

The third *DuPont* factor relates to the similarity or dissimilarity of established, likely-to-continue trade channels. Here, because the involved goods are in-part identical, and because there are no restrictions or limitations in the respective identifications, we presume that the goods travel through the same channels of trade,

---

[34] We take judicial notice of the full definition for NECKTIE: "A narrow fabric band of varying length worn around the neck and tied in a knot or bow close to the throat." Taken from www.ahdictionary.com; based on THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, FIFTH EDITION copyright 2020 by Houghton Mifflin Harcourt Publishing Company. The Board may take judicial notice of dictionary definitions, *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), including online dictionaries that exist in printed format or regular fixed editions. *In re Red Bull GmbH*, 78 USPQ2d 1375, 1377 (TTAB 2006).

such as brick-and-mortar and online apparel outlets,[35] and to the same classes of purchasers. *See Genesco Inc. v. Martz*, 66 USPQ2d 1260, 1268 (TTAB 2003) ("Given the in-part identical and in-part related nature of the parties' goods, and the lack of any restrictions in the identifications thereof as to trade channels and purchasers, [the parties'] clothing items could be offered and sold to the same classes of purchasers through the same channels of trade."). Even with respect to shirts and neckties, we note these goods are purchased in retail apparel stores and can be selected at the same time to coordinate with one another.

There are no price limitations on COBC's shirts or Southernties' t-shirts and neckties, and we must therefore presume that these goods will be sold at all price points, including inexpensive t-shirts and ties. *See In re i.am.symbolic, llc,* 116 USPQ2d 1406, 1413 (TTAB 2015), *aff'd*, 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017). These are also not the type of goods where ordinary consumers are likely to exercise great care in purchasing such inexpensive apparel and accessories. Indeed, such items may be subject to impulse purchases. *Recot Inc. v. Becton*, 214 F.3d 1322, 54 USPQ2d 1894, 1899 (Fed. Cir. 2000) ("When products are relatively low-priced and subject to impulse buying, the risk of likelihood of confusion is increased because purchasers of such products are held to a lesser standard of purchasing care."); *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.,* 748 F.2d 669, 223 USPQ 1281, 1282 (Fed. Cir. 1984).

---

[35] The record includes photographs of retail store window displays offering neckties and shirts, along with other articles of clothing. See, e.g., 35 TTABVUE 10, 12.

2. Similarity of the Marks

We now consider the first *DuPont* likelihood of confusion factor, which focuses on "the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005) (quoting *DuPont*, 177 USPQ at 567). "The proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs. Inc. v. Triumph Learning LLC*, 101 USPQ2d at 1721 (quotation omitted). Consumers may not necessarily encounter the marks in close proximity and must rely upon their recollections thereof over time. *In re Mucky Duck Mustard Co.*, 6 USPQ2d 1467, 1468 (TTAB 1988). The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *United Global Media Grp., Inc. v. Tseng*, 112 USPQ2d 1039, 1049 (TTAB 2014); *In re Binion*, 93 USPQ2d 1531, 1534 (TTAB 2009). Here, the average purchaser of the involved goods includes ordinary shoppers for neckties and shirts, including t-shirts.

We also keep in mind that where the goods of the parties are identical, as they are in part in this case, the degree of similarity between the marks required to support a finding of likelihood of confusion is not as great as would be required with diverse goods. *See Bridgestone Ams. Tire Operations, LLC v. Fed. Corp.*, 673 F.3d 1330, 102

USPQ2d 1061, 1064 (Fed. Cir. 2012); *Viterra*, 101 USPQ2d at 1908; *In re Mighty Leaf Tea*, 601 F.3d 1342, 94 USPQ2d 1257, 1260 (Fed. Cir. 2010).

In this case, we find that COBC's mark, , and Southernties' mark, , are overall very similar. Both marks are profile designs of a right-facing, standing pelican. While the species of pelican in each mark may vary and have different attributes,[36] such as bill with a pouch, we keep in mind that the average consumer will not have the luxury of a side-by-side comparison. Rather, consumers will need to rely upon their recollections over time and, having been familiar or exposed to either mark, are very likely to reference either one with the words "the pelican mark" in describing the mark to others. Indeed, "[c]onsideration must also be given to the fact that a purchaser's recollection of design marks is often of a general and hazy nature." *Matsushita Elec. Indus. Co., Ltd. v. Sanders Assoc., Inc.*, 177 USPQ 720, 726 (TTAB 1973).

In sum, despite some visual differences, the marks are sufficiently similar in terms of their overall commercial impressions conveyed by the pelican designs in each mark. Consumers of ties, shirts and hats who encounter these marks are likely to assume a connection between the parties based on the similar commercial impressions of the marks. This *DuPont* factor also weighs in favor of finding a likelihood of confusion.

---

[36] Southernties argues that its pelican mark represents a "Brown Pelican species," whereas COBC's mark depicts an "American White Pelican." 49 TTABVUE 25-26.

In gauging the significance of the fact that both marks depict pelicans, we note that there is no evidence of weakness of pelican designs or the term "pelican" in connection with the involved goods. The record does not show that a pelican may have any significance in connection with ties, shirts or hats, and we must assume that COBC and Southernties are the only entities seeking to use a pelican or pelican-design in connection with these goods.

3.  Balancing of Factors - Conclusion

Upon balancing the relevant *DuPont* factors, we find confusion is likely between COBC's applied-for pelican mark and Southernties right-facing pelican mark. In particular, the parties' pelican marks are so similar that when used on goods that are identical (in part) or otherwise closely related, and offered in the same trade channels to the same classes of consumers, those consumers are likely to be confused as to the source of the goods.

We therefore sustain the opposition to COBC's application for registration of the mark  based on a likelihood of confusion with Southernties' prior-used and registered right-facing pelican mark.

V.  Southernties' Counterclaim to Cancel COBC's registration for its Pelican With Wording Mark Based on Likelihood of Confusion

We turn next to Southernties' counterclaim to cancel COBC's registration of the mark,  (the wording in the mark is MOBILE BAY BY CHARLES OLIVER)

for shirts and hats. Again, Southernties pleaded an alternative likelihood of confusion claim against this mark based, in part, on Southernties' prior rights in its registered right-facing pelican mark, . Because this counterclaim involves both parties owning registrations, the burden falls on Southernties, as plaintiff, to prove prior use of its registered right-facing pelican mark vis-à-vis COBC's registered pelican with wording mark. *See Brewski Beer Co. v. Brewski Bros., Inc.*, 47 USPQ2d 1281 (TTAB 1998). As discussed supra, Southernties has demonstrated that it has acquired priority rights on neckties going back to May 2007 based on use of its mark by a predecessor-in-interest on ties.[37] COBC, on the other hand, does not argue an earlier use date for its registered mark, but asserts that it first used the mark in 2011.[38] Accordingly, Southernties has established its priority for its right-facing pelican mark for ties against COBC's registered pelican with wording mark.

1.  Relatedness of the Goods, Trade Channels, Classes of Consumers

For reasons already discussed, we find that neckties are closely related to shirts. These goods may be marketed in the same trade channels, such as retail clothing stores, to the same purchases. In particular, neckties and shirts may be purchased together at the same time in the same store as complementary goods for purposes of

---

[37] Again, we note that Southernties has established a priority date of May 2007 for neckties, and not for shirts (see Note 29).

[38] 48 TTABVUE 11.

creating a fashionable look. Accordingly, the *DuPont* factors involving relatedness of the goods and their trade channels all weigh in favor of finding confusion likely.

2.  Similarity of the Marks

We now compare Southernties'  mark with COBC's  mark.

For reasons also already discussed, we find the pelican designs in the two marks to be overall very similar.

Here, there is the additional wording, MOBILE BAY BY CHARLES OLIVER, in COBC's mark and this obviously presents a point of difference between the marks. We also keep in mind that the wording in a composite word and design mark generally plays a dominant role in that mark because it offers consumers the ability to easily verbalize the mark.

On the other hand, the pelican design element of COBC's mark features prominently, taking up the larger part of the overall mark and above the significantly smaller wording. We further point out that there is no wording in Southernties' mark for which consumers can easily verbalize and use to distinguish from the wording in COBC's mark. Thus, we must consider the likelihood of confusion for consumers who are already familiar with Southernties' right-facing pelican design mark for neckties but unaware of the name of the source. When these consumers encounter COBC's mark on shirts, it is likely they will mistakenly believe both marks point to the same source with the wording in COBC's mark merely providing previously-unknown

information concerning the actual name of the source or designer for the involved shirts and neckties.

Ultimately, despite the addition of the wording in COBC's mark, we find this and other differences are outweighed by the prominence of the pelican design in COBC's mark and that it closely resembles Southernties' right-facing pelican mark. When viewed in their entireties, the commercial impressions of the two marks are very similar based on the pelican designs. We point out again that there is no evidence of record that pelican designs or the term "pelican" has any significance or weakness in the context of the involved goods. This *DuPont* factor thus weighs in favor of finding confusion likely.

3. Balancing of Factors - Conclusion

Upon balancing the relevant *DuPont* factors, we find confusion is likely between COBC's registered pelican mark with wording and Southernties right-facing pelican mark. Viewing the parties' pelican marks, which we find to be overall very similar on goods that are closely related and offered in the same retail trade channels to the same classes of consumers, consumers are likely to be confused as to the source of the goods.

Southernties petition to cancel COBC's registration of the mark based on a likelihood of confusion with Southernties' prior-used and registered right-facing pelican mark is granted.

VI.    COBC's Petition to Cancel Southernties' Registered Mark  on Likelihood of Confusion Claim

We turn now to COBC's petition to cancel Southernties' registration (Reg. No. 4462572) of the left-facing pelican mark for neckties on the ground that it is likely to cause confusion as to source with COBC's two previously used marks:[39]

  and  on hats and shirts.

The conclusions we have already reached with respect COBC's pleaded pelican design marks (with and without wording) mean that COBC cannot rely on any presumptive validity of those marks or, for priority purposes, the filing dates of the underlying applications. However, as already noted, COBC additionally pleaded prior common law rights in these marks and it may rely on these rights [for purposes of the cancellation proceeding against Southernties' left-facing mark,  .

For purposes of likelihood of confusion analysis, we focus on COBC's pelican mark without wording vis-à-vis Southernties' right-facing pelican mark. That is, this mark bears a closer resemblance to Southernties' mark than the other pelican mark with the additional wording. *See, e.g., In re Max Capital Group Ltd.*, 93 USPQ2d 1243, 1245 (TTAB 2010).

---

[39] We take note, again, that Southernties owns a second registration (Reg. No. 4988701); however, COBC did not petition to cancel this registration (see Note 32).

A. Priority

"To establish priority, the petitioner must show proprietary rights in the mark that produce a likelihood of confusion. These proprietary rights may arise from a prior registration, prior trademark or service mark use, prior use as a trade name, prior use analogous to trademark or service mark use, or any other use sufficient to establish proprietary rights." *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1378 (Fed. Cir. 2002) (internal citations omitted). In the absence of evidence establishing earlier use of its mark, a party may rely for priority purposes on the filing date of the application that matured into its registration. Section 7(c) of the Trademark Act, 15 U.S.C. § 1057(c); *see also Brewski Beer Co.*, 47 USPQ2d 1283-84; *Am. Standard Inc. v. AQM Corp.*, 208 USPQ 840, 842 (TTAB 1980). Thus, Southernties, at the very least can rely on the filing datefor its application that matured into the involved registration, May 28, 2013. We further note Southernties, in its registration, claims it first used this mark on ties anywhere and in commerce on May 3, 2013. Southernties did not prove use of this mark on neckties earlier than this asserted date, and we keep in mind that Southernties' attempt to tack the earlier priority date from the right-facing pelican mark has been rejected.

COBC has established that common law rights in its pelican mark on apparel, including hats and shirts, going back as early as September 19, 2011. Specifically, Robert C. Lake, Jr., an Initial Director of COBC, testified that he began using the pelican mark on September 19, 2011 through department stores he owned, Kinnucan Enterprises, Inc., and that he continuously used the mark since that date until he

assigned this mark to COBC.[40] Michael T. Clark, COBC's Vice-President of Operations, also testifies that COBC has been using the mark since that date.[41] Copies of invoices for purchases of apparel, including hats, pants and shirts, etc., by Kinnucan for dates in 2011 are attached as exhibits to Mr. Clark's affidavit.[42] A copy of the assignment, dated August 5, 2014, transferring rights in the marks from Lake to COBC is also of record.[43]

Accordingly, we find COBC has demonstrated that it acquired prior common law rights in its pelican mark for hats and shirts versus Southernties' left-facing pelican mark for neckties.

B. Likelihood of Confusion

1. Relatedness of the Goods, Trade Channels, Classes of Consumers

Again, for reasons already discussed, we find that neckties are closely related to shirts and may be marketed in the same trade channels, such as retail clothing stores, to the same classes of purchasers. Accordingly, the *DuPont* factors involving relatedness of the goods, their trade channels, and purchasing conditions, all weigh in favor of finding confusion likely.

---

[40] 46 TTABVUE.

[41] 39 TTABVUE.

[42] 16-17 TTABVUE (Clark Exhibs. H-M).

[43] 22 TTABVUE (Exhib. U).

2. Similarity of the Marks

In this case, we find COBC's mark and Southerties' mark are overall very similar. As with our previous comparisons, we base the overall similarity of the marks on the fact that each depicts the profile of pelican and thus they convey nearly the same commercial impression. Although the marks may represent different species of pelicans with certain pronounced features, e.g., a pouched bill in COBC's mark, and are different facing, we keep in mind that a consumer's recollection of marks is often "a general and hazy nature." *Matsushita Elec. Indus. Co., Ltd.*, 177 USPQ 726. Consumers of ties, shirts and hats who encounter these marks are likely to assume a connection based on the pelican-centered commercial impressions of the marks. This *DuPont* factor also weighs in favor of finding a likelihood of confusion.

3. Balancing the Factors - Conclusion

Given our findings regarding the aforementioned *DuPont* factors, we find confusion is likely. Accordingly, COBC's petition to cancel Southernties registration of the mark based on a likelihood of confusion with COBC's previously used pelican mark is granted.

VII. Southernties' Counterclaim to Cancel COBC's Registered Marks: MOBILE BAY and MOBILE BAY BY CHARLES OLIVER

A. Geographically Descriptive

Southernties has alleged that COBC's registrations for the marks MOBILE BAY and MOBILE BAY BY CHARLES OLIVER should be cancelled on the ground that

the marks are primarily geographically descriptive under Section 2(e)(2) of the Trademark Act, 15 U.S.C. § 1052(e)(2) and lack acquired distinctiveness.

A mark is primarily geographically descriptive if: (1) the primary significance of the mark is the name of a place that is generally known; (2) the goods or services originate in the place identified in the mark; and (3) the relevant purchasers would associate the identified services with the place named, i.e., the public would believe that the services come from the place named. *See In re Nantucket, Inc.*, 677 F.2d 95, 213 USPQ 889, 891 (CCPA 1982); *see also In re Newbridge Cutlery Co.*, 776 F.3d 854, 113 USPQ2d 1445, 1448-49 (Fed. Cir. 2015); *In re Societe Generale des Eaux Minerales de Vittel S.A.*, 824 F.2d 957, 3 USPQ2d 1450, 1452 (Fed. Cir. 1987); *Spiritline Cruises LLC v. Tour Mgmt. Serv., Inc.*, 2020 WL 636467 (TTAB February 7, 2020).

Although Southernties argues that the marks should be refused registration because they are primarily geographically descriptive, it asserts "[u]pon information and belief, [COBC's] goods do not come from, or otherwise originate in, that region or place [Mobile Bay]."[44] Because Southernties actually argues that COBC's goods do not come the asserted geographic area in the mark, and this is a necessary element for which Southernties must prove the opposite, we are perplexed as to why or how Southernties believes it can prevail on this ground. In any event, and to be clear, it has not been established by a preponderance of the evidence that COBC's goods originate from Mobile Bay, Alabama, and we therefore deny the counterclaims to

---

[44] 47 TTABVUE 23.

cancel either registration on the ground that the marks are primarily geographically descriptive. Accordingly, the counterclaim to cancel the registrations on this ground is denied.

B. Geographically Deceptively Descriptive

Southernties also seeks to cancel COBC's registrations on the ground that the goods covered by the registrations "do not, in fact, come from Mobile Bay in Alabama" and the marks therefore are primarily geographically deceptively misdescriptive, under section 2(e)(3) of the Trademark Act, 15 U.S.C. § 1052(e)(3).

A mark is primarily geographically deceptively misdescriptive, and barred from registration under Section 2(e)(3), if:

1. The primary significance of the mark is a generally known geographic place;

2. The goods do not originate in the place identified in the mark;

3. Purchasers would be likely to believe that the goods originate in the geographic place identified in the mark; and

4. The misrepresentation would be a material factor in a substantial portion of the relevant consumers' decision to buy the goods.

*In re Miracle Tuesday, LLC*, 695 F.3d 1339, 1343, 104 USPQ2d 1330, 1332 (Fed. Cir. 2012); *In re Spirits Int'l, N.V.*, 563 F.3d 1347, 1350–54, 90 USPQ2d 1489, 1490–95 (Fed. Cir. 2009); *see also*, TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1210.05(b) (Oct. 2018).

Southernties did not submit any evidence showing that consumers are likely to believe COBC's goods originate from Mobile Bay, Alabama or that such a misrepresentation would be material to the consumer's decision to purchase the

goods. Having failed to carry its burden in proving these essential elements of the claim, Southernties cannot prevail on its claim that the marks are geographically deceptively misdescriptive.[45]

---

[45] In its brief, and under a bolded caption "[COBC] HAS COMMITTED FRAUD UPON THE USPTO AND ITS MARKS SHOULD BE CANCELLED," Southernties repeats its claim that COBC's marks are primarily geographically deceptively misdescriptive and "upon information and belief, the registrations were obtained through fraud on the USPTO." 47 TTABVUE 30-31. However, Southernties does not point to any particular fraudulent statement made by COBC in connection with its acquisition of the registrations. The ground of fraud must not only be plead with particularity, stating an allegation that the other party knowingly made specific, false representations of material fact in connection with its application with the intent of obtaining (or maintaining) a registration to which it is otherwise not entitled. Fed. R. Civ. P. 9(b); s*ee In re Bose Corp.*, 580 F.3d 1240, 91 USPQ2d 1938, 1942 (Fed. Cir. 2009). Here, Southernties has neither alleged or argued fraud with sufficient particularity, nor has it proven by a preponderance of the evidence that COBC made a made specific, false representations of material fact. Accordingly, any counterclaim based on the ground of fraud is denied.

Southernties also argues for the first time in its rebuttal brief its pleaded claim that COBC's registrations should be cancelled because the applications that matured into the registrations are void ab initio inasmuch as they were filed in the name of "Robert C. Blake" or there are some discrepancies in the names "Robert C. Lake, Jr." and "Robert C. Lake." 49 TTABVUE 35-38. Because this argument and the asserted ground were not raised in Southernties' initial brief in the position of plaintiff, it is considered to have been waived and Southernties' arguments in its reply brief constitutes improper rebuttal. *Cf. Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 73 USPQ2d 1678, 1685 n.4 (Fed. Cir. 2005) (court will not consider arguments raised for the first time in reply brief). Moreover, we note as a matter of fairness that COBC is in the position of defendant with respect to this claim and, because sur-reply briefs are not permitted, it did not have the opportunity to address Southernties' arguments. *See* TBMP § 801.02(d) and authority cited therein. In any event, we note that Mr. Lake testified in his rebuttal declaration that he was the "original applicant" in the involved applications and that any misspelling of his name was simply a "scrivener's error." 46 TTABVUE 2-3. We find this is a very plausible explanation and sufficient to overcome Southernties' claim.

VIII. Southernties' Request that Judgment be Entered Against COBC's

Registered Marks: SOUTHERN TIGER and       Based on COBC's Voluntary Surrender Without Southernties' Consent

In its initial trial brief, Southernties notes that COBC filed voluntary surrenders with respect to its two registrations containing bowtie designs (Reg. Nos. 4533032 and 4745980) on December 7, 2015, and after Southernties filed its counterclaims to cancel these registrations.[46] Southernties asserts that it did not consent to this voluntary surrender of the registrations and, pursuant to Rule 2.134, judgment should therefore be entered against COBC with respect to these registrations.

COBC did not respond to this issue in its trial briefs.

Rule 2.134(a), 37 CFR § 2.134(a), provides that "[a]fter the commencement of a cancellation proceeding, if the respondent applies for cancellation of the involved registration under [Section 7 of the Act] without the written consent of every adverse party to the proceeding, judgment shall be entered against the respondent." *See Harry Winston, Inc. v. Bruce Winston Gem Corp.*, 111 USPQ2d 1419, 1423 (TTAB 2014) (judgment entered against opposers who voluntarily surrendered pleaded registration without applicant's consent where such registration was the subject of a counterclaim to cancel); *Christiane E LLC v. Int'l Expedition Inc.*, 106 USPQ2d 2042, 2044 (TTAB 2013) (judgment entered against respondent where petitioner's written

---

[46] See 8 TTABVUE (Southernties' counterclaim filed on November 13, 2015 in Cancellation No. 92062183); and Notes 16 and 17.

consent to voluntary surrender not of record and where respondent did not show an extraordinary situation in support of its motion to withdraw its voluntary surrender).

Under these circumstances and pursuant to Rule 2.134(a), judgment is entered against COBC with respect to Reg. Nos. 4533032 and 4745980.

***

**Decision**: The following is hereby ordered:

1. Southernties' opposition to COBC's application Serial No. 86689853 (COBC's pelican mark) is <u>sustained</u>;

2. Southernties' counterclaim to cancel COBC's Reg. No. 4493435 (COBC's pelican with wording mark) is <u>granted</u>;

3. COBC's petition to cancel Southernties' Reg. No. 4462572 (Southernties' left-facing pelican mark) is <u>granted</u>;

4. Southernties' counterclaims to cancel Reg. Nos. 4487084 and 4745980 are <u>denied</u>; and

5. <u>Judgment is entered</u> against COBC's Reg. Nos. 4533032 and 4745980, pursuant to Rule 2.134(a).